UNITED STEELWORKERS OF
AMERICA, AFL–CIO, etc.,
Plaintiff-Appellant,

Stephen L. Downey et al., Plaintiffs,

v.

UNIVERSITY OF ALABAMA, etc.,
et al., Defendants,

Joseph F. Volker, etc., et al.,
Defendants-Appellees.

No. 77–2258.

United States Court of Appeals,
Fifth Circuit.

July 18, 1979.

---

George C. Longshore, Birmingham, Ala., Bernard Kleiman, Chicago, Ill., for plaintiff-appellant.

John J. Coleman, Jr., James P. Alexander, Birmingham, Ala., for plaintiffs.

Before WISDOM, CLARK and FAY, Circuit Judges.

FAY, Circuit Judge:

This case concerns job terminations of certain employees in the Maintenance and Building and Alterations Departments of the University of Alabama at Birmingham (UAB). The employees' Union asserts that the terminations were violative of the employees' first, fifth and fourteenth amendment rights. From the granting of a summary judgment in favor of defendants-appellees in the United States District Court for the Northern District of Alabama, plaintiff Union appeals. We affirm.

## FACTS

On August 13, 1975, plaintiff Strevel, acting in his capacity as Director of District 36 of the United Steelworkers of America, AFL–CIO (USW), wrote a letter to UAB President Volker informing him that the Union represented a majority of the hourly paid employees in the Maintenance and Building and Alterations Departments of UAB and requesting a meeting with UAB officials "to establish an appropriate collective bargaining relationship." The University responded by letter of August 26 to Strevel from the Director of Personnel Services, Lionel C. Skaggs. Skaggs noted that while UAB recognized that its non-supervisory employees were free to join any labor organization, UAB was prohibited by Alabama law from entering into a collective bargaining contract with USW.

The Union thereupon brought suit in Federal District Court seeking a declaration of rights of the parties. Judge Hancock issued an order acknowledging the right of both supervisory and non-supervisory employees to express their views and opinions on matters of concern to them, including employment matters, to the public and the University, and recognizing the employees' rights to join any labor union or other similar organization. The order went on to state, however, that while the employees were free to communicate with the University through any spokesman or representative, and while the University "must give any such expressions due consideration,

58

there is no requirement that UAB . . . accept such expressions or, where made through a spokesman or representative, recognize the spokesman or representative as an agent for collective bargaining, as that term is generally understood." *United Steelworkers of America, AFL–CIO, et al. v. University of Alabama in Birmingham, et al.,* No. Civ. 75H–1788–S (N.D.Ala., Oct. 24, 1975). No appeal was taken from that order.

The order resulted in a series of four meetings between Union representatives and UAB officials, during which suggestions and comments of the employees and the Union were discussed. The University's response apparently did not satisfy the Union and employee representatives. The fourth meeting was terminated abruptly, followed by a strike of the employees in the Maintenance and Building and Alterations Departments, which commenced on March 31, 1976.

On Friday, April 2, 1976, Skaggs informed each of the striking employees by telegram that they were in the second day of unexcused absences from work and reminded them of the established written policy of UAB set forth in the UAB Non-Academic Personnel Handbook that "unexcused absence for three days without notification or reasonable cause" constituted grounds for dismissal.

The strike lasted about seven days. All employees participating in the strike were disciplined on a progressive basis by UAB, as follows: (i) employees absent for one day were placed on probation for 60 days; (ii) employees absent for two days received 90 days probation; (iii) employees absent for three days received 180 days of probation and one day of suspension from work; (iv) employees absent for four days received 180 days probation and two days of suspension from work; (v) employees absent for five days received 180 days probation and three days suspension from work; and (vi) employees absent for a period in excess of five days were terminated.

On April 16, 1976, twenty-one former hourly employees of UAB, the District Di-

rector of USW and the USW brought this action for injunctive relief and damages against UAB, the Board of Trustees of the University of Alabama, University of Alabama President Joseph Volker and UAB Director of Personnel Services Skaggs. The complaint alleged that the UAB discharge of the individual plaintiffs amounted to a denial of their first, fifth and fourteenth amendment rights. Plaintiffs sought declaratory and injunctive relief and an award of damages.

On April 19, 1976, following a denial of plaintiffs' application for preliminary relief, the District Court stated that it would retain jurisdiction pending exhaustion by the individual plaintiffs of the UAB's internal grievance procedures. Shortly thereafter, the District Court dismissed the charges against UAB and the Board of Trustees. Following the processing of the grievances of the individual plaintiffs through the steps of the UAB grievance procedure, the District Court granted motions for summary judgment filed by the remaining defendants. The United Steelworkers of America appeal this decision.

## I. STANDING

The first issue which we address is that of the standing of the Union to pursue this appeal. Appellee notes that the Union is the only party plaintiff who has appealed the summary judgment. Appellee asserts that while the Union has many legitimate concerns with regard to such matters as its status as an organization or the extent to which it may act as a bargaining representative for public employees, it has no standing to pursue, as an entity, the specific individual claims of UAB employees terminated for extended and unexcused absences from work. Appellant counters that since the Union has standing to represent its members and to assert their rights, "well-established precedents allow this Court to consider the merits of the individual plaintiff's claims."

In *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court considered the rights of an associa-

tion to represent its members. In that case, the intervenor Home Builders Association, consisting of residential construction builders, sued a municipality alleging that certain zoning restrictions deprived some of its members of substantial business opportunities. Home Builders alleged damages in the amount of $750,000. With respect to the damages claim, the Court stated:

> * * * (W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured. Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind. . . .
>
> The present case, however, differs significantly as here an association seeks relief in damages for alleged injuries to its members. Home Builders alleges no monetary injury to itself, nor any assignment of the damages claims of its members. No award therefore can be made to the association as such. Moreover, in the circumstances of this case, the damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individual proof. Thus, to obtain relief in damages, each member of Home Builders who claims injury as a result of respondents' practices must be a party to the suit, and Home Builders has no standing to claim damages on his behalf.

*Id.* at 515–516, 95 S.Ct. at 2213 (citations omitted).

In this case, the relief requested in Count I consists of declaratory and injunctive relief. In particular, plaintiffs seek: 1) a declaration that plaintiffs were terminated from employment without procedural due process; 2) to enjoin defendants from failing and refusing to continue the individual plaintiffs in their respective jobs, 3) to enjoin defendants from refusing to acknowledge their employees' rights to petition for redress of grievances by the Union as their representative, 4) to enjoin defendants from refusing to enter into meaningful discussions with the Union in such a manner as to evidence an intent to resolve the differences that separate the parties, 5) preliminary relief with reinstatement pending disposition, and 6) attorney's fees and other relief as the Court deems proper. Count II seeks monetary damages in the amount of $25,000 per individual plaintiff for the consequential damages occasioned by defendants' allegedly illegal course of conduct.

█ Under *Warth,* it is clear that before this Court, the Union has standing to assert the claims aggregated in Count I. In that count only prospective declaratory and injunctive relief is sought. It is equally clear, however, that the Union, absent the individual plaintiffs, may not here appeal the summary judgment with respect to Count II. Here, as in *Warth,* the association (Union) alleges no monetary injury to itself. The damages are not common to the entire membership nor shared by all in equal degree. Thus *Warth* teaches, USW has no standing to claim damages on behalf of UAB employees. In order to obtain relief in damages, each member of the Steelworkers who claims injury as a result of defendants' practices must pursue his own damage claim. Since the individual plaintiffs have failed to appeal the summary judgment as to Count II, and since USW has no standing to challenge the summary judgment with respect to that Count, the matters contained in that Count are not before us and the summary judgment is affirmed by operation of law. We therefore limit our inquiry to the summary judgment as to Count I.

## II. DUE PROCESS

Count I of the complaint alleges that the individual plaintiffs have a property inter-

est in their jobs and that absent pre-discharge notice and opportunity to reply at an impartial hearing, the termination procedure is constitutionally infirm. Before we reach the question of whether the procedures accorded the individual plaintiffs meet the requirements of due process, it is necessary to determine whether these individuals were possessed of property rights.

■ "A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). The sufficiency of a claim of entitlement must be decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). In the instant case, both parties rely on the non-academic personnel handbook of UAB entitled *You and UAB* to support their conflicting claims as to whether the employees possessed a claim of entitlement. *Bishop* therefore requires reference to state law to determine whether the handbook confers upon these employees a legitimate expectation of continued employment.

Section 3:15 of the handbook is entitled "Termination of Employment." It provides, inter alia, that "(t)he University's rules concerning dismissal are intended to be general guidelines to good judgment and fair treatment. *Just cause* for dismissal is not limited to those violations that follow as there may be other offenses committed that may warrant this action depending on a number of factors." (Emphasis added). Immediately below this quote is a list of "violations" which "may be cause for immediate dismissal." The Union urges that our statement in *Thurston v. Dekle,* 531 F.2d 1264, 1272 (5th Cir. 1976) that "[c]ity employment which allows termination only for cause creates a constitutionally protectable property interest," mandates the conclusion that the employees in this case also possessed a constitutionally protectable property interest.

■ Nothing in *Thurston* demands, however, that we dissect an employee handbook and then examine only one slide under a judicial microscope. Rather, we must read the handbook in its entirety to glean the expectations of the parties. After an examination of the entire handbook, we conclude that the discharged employees had no legitimate claim of entitlement to their employment and hence, the procedures employed by UAB pass constitutional muster.

■ We rely primarily upon the fact that these employees were "permanent" employees, defined in handbook Section 36 as "individuals who have an indefinite appointment . . . ." Under Alabama law, an employee employed for an indefinite period of time may resign from his employment at any time, and may be terminated therefrom at any time at the will of his employer, provided that the employee furnishes no consideration in addition to the services incident to the employment. *See United Security Life Ins. Co. v. Gregory,* 281 Ala. 264, 201 So.2d 853 (1967); *Foster Wheeler Corp. v. Zell,* 250 Ala. 146, 33 So.2d 255 (1948); *Alabama Mills, Inc. v. Smith,* 237 Ala. 296, 186 So. 699 (1939). No assertion of additional consideration has been advanced by plaintiffs. Thus, while Section 3:15 of the handbook would appear in isolation to create a property right, under Alabama law, plaintiffs have no legitimate claim of entitlement.

Further study of the handbook strengthens our conclusion. The "Management Rights" portion of the booklet provides:

From time to time . . . the University just as any other large organization, has to make decisions without prior consultation with its employees. The University must, therefore, maintain exclusive discretion to exercise the customary functions of management including, but not limited to, the discretion to . . . dismiss . . . and discipline employees; . . . to determine the size of and composition of the work force; to establish, change, and abolish policies, procedures, rules and regulations; and to

assign duties to employees in accordance with the needs and requirements determined by the University.

We can hardly think of clearer words which could be used by management to reserve the right to hire and fire and discipline employees in the exercise of their discretion.

Further fortification for our conclusion comes from that portion of the handbook relied upon by the employees. Under the so-called "just cause clause" are listed, as previously noted, several factors which may be cause for immediate dismissal." Among these is "unexcused absence for three days without notification." It is uncontradicted that in the second day of the strike, all absent employees received a telegram which stated that they were in the second day of an unauthorized absence and that unexcused absence for three days was grounds for immediate dismissal. In support of their motion for summary judgment, defendants, by affidavit, outlined the aforementioned disciplinary schedule which they followed in dealing with the striking employees. The disciplinary schedule is in fact more lenient than that to which the employees were entitled under *You and UAB* and Alabama law. Plaintiffs, in opposing the motion for summary judgment, do not deny that they were informed of the three-day rule or that they were, in fact, absent without authorization for more than three days. With the pleadings and affidavits in this posture, the district court did not err when it concluded that there were no genuine issues of material fact to be resolved. In light of the foregoing, summary judgment, insofar as plaintiffs' property interests are concerned, was not improper.

### III. FIRST AND FOURTEENTH AMENDMENT CLAIMS

Appellants' final argument is that summary judgment was improper in light of their allegation that the individual employees were terminated for exercising their constitutionally protected first and fourteenth amendment freedoms. The Union asserts that UAB's motivation in terminating the employees is a material fact to be determined after a trial on the merits. Summary judgment, it is argued, was therefore inappropriate.

The substantive law in this area is clear. There is a unanimity of opinion on the part of courts and legislatures that government employees do not have the right to strike. *See United Federation of Postal Clerks v. Blount,* 325 F.Supp. 879 (D.D.C.1971) (three judge court) *aff'd* 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1971). It is equally clear that while public employees may be barred from striking, this prohibition may not interfere with their rights which are fundamental and constitutionally protected. "The right to organize collectively and to select representatives for the purposes of engaging in collective bargaining is such a fundamental right." *Id. See Thomas v. Collins,* 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1945). Thus if appellant could prove that curtailment of, or punishment for the exercise of employees' constitutional rights was the motive for their termination, judicial relief would be appropriate. *See Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

In order to successfully defeat a motion for summary judgment, however, more than mere allegations and conclusory statements must be offered. *Cf. Gossett v. Du-Ra-Kel Corp.,* 569 F.2d 869 (5th Cir. 1978). Once the moving party has properly supported his summary judgment motion, the nonmoving party must respond by setting forth specific facts showing that there is a genuine issue for trial. *Ferguson v. National Broadcasting Co., Inc.,* 584 F.2d 111 (5th Cir. 1978).

Defendants deny that the terminations were motivated to defeat plaintiffs organizational rights. In support of this position, defendants offer their disciplinary schedule for striking employees along with affidavits which state that this schedule was applied across the board to non-union and union activists alike. This is supported by evidence that the one employee-union activist who was authorized to be absent

during the strike, was subject to no disciplinary proceedings. UAB also supports its claim that the employees were terminated solely in response to unauthorized absence by pointing to the long history of union activity at UAB and the lack of any affirmative disciplinary action against the participants by UAB until the occurrence of unauthorized absences during the strike. Although for purposes of summary judgment, the record is replete with this and other evidence which shows a lack of anti-union animus on the part of UAB, the employees did not offer evidence which would respond to these affidavit facts and withstand UAB's motion for summary judgment. Instead, on appeal the union relies on affidavits which allege that the University provides a biased grievance procedure for terminated employees, that the University was lethargic in providing information to the state which would have enabled the employees to receive unemployment compensation, and that the "defendants asked and encouraged the strikers to return to work." This evidence does not raise a serious inference that the University had constitutionally prohibited motivations. Accordingly, the district court's granting the defendants' motion for summary judgment is affirmed.

AFFIRMED.