Clyde L. YOUNGER, Plaintiff,

v.

Jack K. REED, W. I. Hollowell, Former Superintendent; Liberty Cash, Assistant Superintendent; Charles F. Riddell, Cleve McDowell, H. L. Roberts, Sr., K. C. Peters, Sr., and John Q. DeMoville, Members of the Mississippi State Penitentiary Board; New Hampshire Insurance Company; Granite State Insurance Company; Western Surety Company; United States Fidelity and Guaranty Company; St. Paul Fire and Marine Ins. Co.; and Transamerica Insurance Company, Defendants.

No. GC 75–8–S.

United States District Court, N. D. Mississippi, Greenville Division.

May 30, 1980.

Barbara Y. Phillips, Lawyers' Committee for Civil Rights, Jackson, Miss., for plaintiff.

P. Roger Googe, Jr., Asst. Atty. Gen., Jackson, Miss., Roy D. Campbell, Jr., and James L. Robertson, Campbell & Delong, Greenville, Miss., for USF&G.

Charles T. Ozier, Wise, Carter, Child, Steen & Caraway, Jackson, Miss., Jerome C. Hafter, Lake, Tindall, Hunger & Thackston, Greenville, Miss., for Western Surety.

Freeland & Gafford, Oxford, Miss., for Granite.

Jimmie B. Reynolds, Jr., Wise, Carter, Child, Steen & Caraway, Jackson, Miss., for St. Paul Fire & Marine.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon the motions of all of the defendants for summary judgment, pursuant to Rule 56, Fed.R. Civ.P. The defendants have submitted affidavits and exhibits in support of their motions, the plaintiff has responded with an affidavit and exhibits, and the matter is now ready for disposition upon the record.

The action sub judice is a rather old case which arises out of certain events at the Mississippi State Penitentiary during the years 1973 and 1974.[1] The plaintiff seeks damages under 42 U.S.C. §§ 1983 & 1985 against two former superintendents of the penitentiary, a former assistant superintendent, five members of the State Penitentiary Board, and the sureties for the public official bonds of all defendants. Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(3) & (4). The record in this case, as established by the affidavits and depositions, indicates that the plaintiff was transferred to the Mississippi State Penitentiary at Parchman (hereinafter referred to as "Parchman") in June of 1969, to begin serving a life sentence upon his conviction of rape. He was then 18 years old. In 1972, plaintiff became a follower of the Nation of Islam, which religion forbids the eating of pork or of any food which has been "contaminated" by pork. It is the plaintiff's contention that the defendant officials refused to accommodate this religious tenet by providing at least one pork-free meal. He alleges specifically that his request was denied on October 17, 1973. He also contends that for extended periods of time he was confined in the "dark hole" at Parchman's Maximum Security Unit.[2]

Plaintiff alleges further, that in 1973 he was transferred to Camp 7 at Parchman, an area reserved for inmates with psychiatric disorders. While at this camp, the plaintiff contracted tuberculosis, and in October, 1973, he was transferred to the state sanitorium. In December, 1973, however, he was transferred back to Camp 7 at Parchman, although he continued to suffer from tuberculosis. It is the plaintiff's contention that the defendants failed to provide him with the proper medical facilities, and did not give him adequate treatment and care for this disease.

All of the defendants have now filed motions for summary judgment, contending that the supporting affidavits and existing record in this case present no genuine issue of material fact, and that the defendants are entitled to a judgment as a matter of law. In support of this second contention, the defendants argue that this court should be guided by the principles of *Bogard*, in finding that the plaintiff has presented no facts which would "pierce the veil" of defendants' qualified immunity. Upon a careful review of the record, the court is of the opinion that the motions are well taken, and should be granted.

---

1. The plaintiff's *pro se* complaint was first received on January 3, 1975; the court's order of January 21, 1975, allowed the plaintiff to proceed *in forma pauperis* and appointed counsel for him. On February 3, 1976, all proceedings in this action were stayed pending the outcome of the appeal in *Bogard v. Cook*, 405 F.Supp. 1202 (N.D.Miss.1975), aff'd, 586 F.2d 399 (5th Cir. 1978). After that decision was affirmed, the court entered an order on January 5, 1979, lifting the stay and assigning this action to a magistrate.

2. The Fifth Circuit has described the "dark hole" as follows:

". . . [E]ach side of the maximum security unit contained a 6' × 6' cell, known as the 'dark hole'. The dark hole had no windows, lights, commode, sink or other furnishings. A six-inch hole located in the middle of the concrete floor was provided for disposition of bodily wastes. A solid heavy metal door closed the cell. Mississippi law specifically authorized use of dark hole punishment for periods of up to twenty-four hours. Miss. Code Ann. § 47–5–145." *Bogard v. Cook*, 586 F.2d at 402. This form of punishment as it was then practiced was brought to an end by the injunctive relief granted in *Gates v. Collier*, 349 F.Supp. 881, 900 (N.D.Miss. 1972), aff'd, 501 F.2d 1291 (5th Cir. 1974).

The defendant Charles F. Riddell has submitted an affidavit in support of the defendants' motion, which states that he was a member of the State Penitentiary Board from May, 1972, until May, 1975. During his tenure, the Board was in the process of complying with and implementing the changes mandated by *Gates*. Pursuant to these changes, the Board adopted rules and regulations governing inmate conduct and providing an established disciplinary procedure. Riddell states that the plaintiff's "records reflect that he was punished for rule infractions by the disciplinary council according to court approved procedure." The plaintiff's prison record does not indicate that he ever made a complaint concerning the medical treatment or the lack of accommodation to his religious beliefs. Furthermore, the plaintiff's medical records reflect that the treatment provided to him for tuberculosis was effective. The other former members of the Board, who are named as defendants, have also submitted similar affidavits. All of these affidavits establish that these individuals were vested with the authority to approve the procedures implemented after *Gates*, but that they were not in charge of the daily operation of Parchman. The Board employed the Superintendent, and relied upon his expertise in the management and control of prison operations.

The affidavit of the defendant Hollowell, who was acting Superintendent of Parchman from December, 1972, until February, 1974, describes the steps which were taken by his office to implement the *Gates* mandate. These steps included the revision of the prison rules and regulations, the estab-lishment of a guard training program, the screening and approval of trusty guards,[3] and the renovation of several camps within the prison, including Camp 7. Hollowell goes on to state that when he was informed of the plaintiff's condition, he immediately notified the Governor, who ordered the plaintiff transferred to the sanitorium. The plaintiff was returned to Parchman upon the recommendation of Dr. Clyde Watkins, the Superintendent of the sanitorium. Plaintiff's medical record indicates that he was given medical attention on a number of occasions, and that he was hospitalized at several different periods during 1975.

As to the question of failure to accommodate plaintiff's religious beliefs, Hollowell states that the plaintiff was never punished for such beliefs. Furthermore, he appears to rely upon the decision by Chief Judge Keady in *Lockhart v. Hollowell*, No. GC 73–70–K (N.D.Miss. Nov. 27, 1974), wherein the court found that the "penitentiary officials had instituted a practice whereby certain foods served at mealtime would be pork free, and designated as such for Muslim inmates." *Id.* at 4. In that action, the plaintiffs' complaint, alleging the deprivation of their First Amendment Rights, was dismissed with prejudice.

The defendants also rely upon certain passages from the plaintiff's deposition, taken on August 1, 1979, where the plaintiff apparently admits that none of the individuals named as defendants had any personal involvement with the alleged denial of medical treatment or religious practices.[4] Taken together, the defendants con-

---

**3.** Trusty guards or trusty "shooters" were inmates who were "armed with rifles and charged with the day-to-day guarding of the other inmates." *Bogard v. Cook*, 586 F.2d at 402. Other inmates were known as "trusties"; they were unarmed, but they "assisted the prison's civilian employees in various custodial and administrative capacities." 586 F.2d at 402. Pursuant to the order in *Gates*, the defendants were required to eliminate the armed trusties, and to implement a program which would eventually replace all custodial trusties with civilian employees. *Gates v. Collier*, 349 F.Supp. at 902–03.

**4.** The portions of the plaintiff's deposition relied upon by the defendants include the following:

    Q. Well, do you feel like you were denied medical treatment in the sanitorium?

    A. Well no. They sent me back before I was well, though.

    Q. Who is they?

    A. The doctor. (Plaintiff's deposition at p. 38.)

    Q. Did any of the defendants deny you medical service?

tend that all of the evidence in the record shows that there are no facts which point to any proof of malice or gross negligence on the part of the defendants.

The plaintiff has submitted an affidavit in which he states that in March, 1973, he was placed in the Maximum Security Unit without first receiving a hearing. He was returned to Camp 7 in August of that year, but he remained at Maximum Security during that period without meeting with the disciplinary committee or receiving a hearing. He alleges that the conditions in his cell at the Maximum Security Unit were much worse than those at Camp 7, and that several restrictions were placed upon him which were not imposed at Camp 7. Finally, he contends that even though he was returned from the sanitorium so that he could receive psychiatric care, he was not examined by a doctor or seen by a psychiatrist from December 20, 1973, throughout the month of January, 1974.

Plaintiff's claim, as evidenced by his amended complaint and his memoranda and affidavit in opposition to defendants' motions, essentially presents two issues. The first is whether or not the defendants unconstitutionally refused to accommodate his religious beliefs when his request for pork-free meals, made to Sergeant Daves on October 17, 1973, was denied. Secondly, the plaintiff claims that he was not given adequate medical treatment and care upon his release from the sanitorium and his transfer back to Parchman, and that such lack of care demonstrates "deliberate indifference" to his medical needs. *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). For each of these areas, there are indeed issues of fact presented. The crucial question, however, is whether or not, *as to these particular defendants*, there are genuine issues of material fact.

It is beyond question in this action that in order to hold any of the individual defendants liable, the plaintiff must in some way overcome the qualified immunity to which they are entitled. Since the Supreme Court's decision in *Procunier v. Navarette*, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1974), it has been clear that evidence of simple negligence is insufficient to abrogate the immunity of a prison official. The evidence which the plaintiff must show in order to hold the defendants liable has been previously stated by the Fifth Circuit in cases of this nature. The proof may be of either an objective or subjective nature. That is, the plaintiff must show that the defendant knew or should have known that the action which he took would violate a clearly established constitutional right of the plaintiff, or that the defendant acted with the subjective intent to harm the plaintiff. *Cruz v. Beto*, 603 F.2d 1178 (5th Cir. 1979); *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979); *Bogard v. Cook*, 586 F.2d at 411–15.

There has been no such showing in this case. The defendants' affidavits indicate that they had no personal contact with the plaintiff. The plaintiff admits at least this much in his deposition. There is no evidence, therefore, of subjective intent. In fact, the record clearly establishes that the defendants performed their jobs in a reasonable manner, and that there was no violation on their part of the plaintiff's established constitutional rights. Once the defendants' qualified immunity is established as a matter of law, it is the plaintiff's burden to present proof which will prevent that immunity from operating as a complete bar to his cause of action. *See Fielder v. Bosshard*, 590 F.2d 105 (5th Cir. 1979). This burden does not change in a motion for

A. Oh, no. (Plaintiff's deposition at p. 56.)

. . . . .

A. None of the Board members were involved in denying me medical treatment. (Plaintiff's deposition at p. 46.)

. . . . .

Q. Well, did Mr. Liberty Cash or any of those other individuals have any personal involvement to your knowledge with any of the alleged instances that you are complaining about dealing with your religion?

A. Not that I know of. (Plaintiff's deposition at p. 47.)

summary judgment, where the nonmoving party must respond to a properly supported motion by setting forth specific facts showing that there is a genuine issue. *United Steelworkers v. University of Alabama*, 599 F.2d 56 (5th Cir. 1979). The defendants have shown that there are no genuine issues of fact regarding their qualified immunity defense. The plaintiff has demonstrated that there are factual issues regarding the specific incidents complained of, but these are insufficient to establish genuine issues of *material* fact on the question of immunity.

■ This court is aware that the Fifth Circuit Court of Appeals has recently stated that district courts should not be hasty in granting summary judgment when there are less drastic alternatives available, particularly when the plaintiff is proceeding *pro se. Murrell v. Bennett*, 615 F.2d 306 (5th Cir. 1980). In that case, the court reversed the entry of a summary judgment against the plaintiff, holding that the record indicated genuine issues of material fact relating to the question of "deliberate indifference" to the plaintiff's medical needs. The court held that whether or not the plaintiff could "prove deliberate indifference is a question that can be answered only after further factual development." This case can be distinguished, however, in that the crucial question here is one of immunity. There is no need for further factual development on that · issue. This court was presented with a similar question in *Jackson v. Hollowell*, No. GC 73–51–S (N.D.Miss. July 31, 1979) (unreported), where the plaintiff brought an action against these same defendants based upon injuries received when he was shot by an armed trusty guard. The court granted summary judgment in favor of all defendants on the basis of the *Bogard* decision. While each case must necessarily depend upon its own facts, the court is of the opinion that this case is in the same posture. As the Fifth Circuit stated in *Bogard*, "it

does not serve the ends of justice to fix monetary accountability on the state's employees when they did little more than administer their positions during a time of state perpetuation of intolerable conditions over which they had no meaningful control." 586 F.2d at 421. Nor should they be held accountable for their attempt to implement court-ordered changes with limited resources at their disposal. The record is clear that all of the defendants performed their jobs reasonably under the circumstances. There is no showing of the knowledge or intent, going beyond simple negligence, which is necessary to negate the defendants' qualified immunity. The court will, therefore, enter an order granting the defendants' motions for summary judgment, and dismissing the plaintiff's complaint with prejudice.

* See footnote * on p. 74.