**469**

William STAHLKE, Plaintiff,

v.

VAN LEER CONTAINERS, INC., Defendant.

Civ. A. No. 3:93–CV–405WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 31, 1995.

George L. Lucas, Fayetteville, AR, for plaintiff.

N. Victoria Holladay, Leslie E. Weill, Kullman, Inman, Bee, Downing & Banta, New Orleans, LA, for defendant.

### ORDER

WINGATE, District Judge.

Before the court is the defendant's motion for summary judgment pursuant to Rule 56(b)[1] of the Federal Rules of Civil Procedure on plaintiff's claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. Having applied the standard set forth in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), this court is persuaded to grant the defendant's motion for summary judgment.

■ To establish a prima facie case of age discrimination, plaintiff must show: firstly, that he was a member of the protected class; secondly, that he was qualified to per-

form the job; thirdly, that he was discharged; and fourthly, that he was replaced by a person outside the protected class. *Normand v. Research Institute of America, Inc.,* 927 F.2d 857, 859 (5th Cir.1991). An employer may rebut a prima facie case of age discrimination by articulating some legitimate, non-discriminatory reason for its action. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). If the employer articulates legitimate, non-discriminatory reasons for its actions, the presumption created by the plaintiff's prima facie case dissolves and the burden reverts to the plaintiff to prove that the employer's reasons were pretextual. *Thornbrough v. Columbus & Greenville R.R. Co.,* 760 F.2d 633, 646 (5th Cir.1985).

■ In the case *sub judice,* plaintiff presents no evidence to construct a prima facie case. He merely asserts his age, that of his successor and his unsubstantiated belief that he was discharged on account of his age. He presents no evidence to challenge defendant's proffered reasons for discharging him, as indicated by the following testimony elicited during plaintiff's deposition:

Q. You filed a charge of discrimination with the EEOC, I believe, on January 22, 1993.

A. Yes.

BY MR. CHRISTY: One more sticker. **(EXHIBIT 20 MARKED)**

Q. (Mr. Christy) I show you Stahlke 20. Do you recognize this as a copy of the charge you filed?

A. Yes.

Q. Now, you state in your charge that you were—"In December I was fired and replaced by a 36 year old man. I believe that my age was the reason for my termination.

A. Yes.

Q. What basis did you have to make that statement?

---

1. **(b) For Defending Party.** A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

A. The fact of one of the times I had gone to Jack—yeah, to Jack around Walt, and he had resented that. I could tell by his attitude, the different incidences of, hey, you're supposed to treat and bow, so to speak, to executives and say "yes, sir."

He did not like to be questioned about anything. Any of his decisions, he would not appreciate counsel. It was just, hey, do it. He had sights on being the next president of the company, which was talked about quite around. He had mentioned to several people about it.

And that he—he wanted someone around who was younger with less experience. I think he didn't want me because of my age and my experience of knowing more than he did. And I mean that respectfully.

The fact that he was in human resources all of his life. He didn't know anything about manufacturing. I had been in manufacturing all my life. I never aspired to get his position because I had told him, "I want to retire when I'm 65." He knew that when he took that position. I told him I was going to retire at 65.

So, therefore, all these incidences that came up, he just brought someone in younger with less experience who was going to say, "Yes, sir." He wants a yes man. And that's a young man, and not me.

Q. What basis do you have to say that he wanted a younger and less experienced person around?

A. Based on all the incidences that I told you where I went around Jack—to Jack, and that he did not appreciate that, and the times that I said that—with Barbara, for example. I should say "yes, ma'am," and do what she wanted. To Jerry Dagen, I should have said, "yes, sir," and done the suggestions that he made. And the fact that the interview, he said I will not cooperate with him. I'm bucking him. He felt that I was bucking him.

   .     .     .     .     .

Q. And you're saying it wasn't your intention to undermine him when you did that?

A. Yes.

Q. But, nevertheless, he was taking it as such, right?

A. Right. And the day before he gave me that interview in July, the day before, it was very hard for him to say it, but I could see it on his face, and he was upset. He said, "Jack said if Bill wants those two people, give them to him." And then the next day, I get the review, which is terse, and boom.

   .     .     .     .     .

Q. Do you know what—do you know if he assumed the position on a regular basis when he first took over? Or was it—do you know if it was on an acting basis?

A. I don't know.

Q. Do you know what, if any, role Mr. Mellema played in your termination?

A. No I don't.

Q. Did Mr. Mellema ever say or do anything to you that would indicate that he was out to get rid of you for any reason?

A. No.

Q. Did he ever say or do anything that would indicate to you that he took age into consideration in making his decisions?

A. No.

Q. Do you know how old Jack Smith is?

A. In his sixties.

Q. Do you know how old Mr. Mellema is?

A. I have no idea.

Q. Are there any other facts that you're aware of that would support your claim that you were let go because of your age?

A. No.

(Plaintiff's deposition, pp. 155–159).

Clearly, one discerns from the above colloquy that plaintiff's suppositions do not assert cognizable evidence of discrimination. His testimony concerning Jack Smith, his former supervisor and defendant Van Leer's acting temporary president; and Andries Mellema,

Van Leer's new president, does not further his claim. Instead, plaintiff offers but conclusionary remarks bereft of a concrete factual basis and the requisite vigor for a prima facie case. *See United Steelworkers of America, AFL–CIO v. University of Alabama*, 599 F.2d 56, 61 (5th Cir.1979) (holding that in order to successfully defeat a motion for summary judgment, more than mere allegations and conclusory statements must be offered); *E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984) ("Pretext cannot be established by mere conclusory statements of a plaintiff who feels he has been discriminated against.").

 Defendant contends that its decision to terminate plaintiff was made only after careful consideration, absent any discriminatory animus, and predicated on plaintiff's performance problems. Plaintiff joined Van Leer in the mid–1970s, and by 1983 plaintiff had become the general manager of defendant's Chicago facility. According to defendant, during plaintiff's stewardship, its Chicago facility was unprofitable. Defendant's facility in Canton, Mississippi, however, was one of defendant's most profitable plants. The Canton facility was run by Edward Psenicka. In an effort to make its Chicago facility profitable, Psenicka was named general manager of that facility and plaintiff was named general manager of the then profitable Canton facility. But, says defendant, under plaintiff's reign, its Canton facility was plagued with low units of production per man; a high percentage of scrap accumulation; customer complaints and high amount of overtime. When these problems surfaced, defendant says it demoted plaintiff to operations manager. Thereafter, defendant says it began to counsel plaintiff extensively in hopes of returning the Canton facility to its previous stature. Walt Reilly, vice president for defendant's southern region, made monthly trips to Canton to discuss the facility's production problems. Despite counseling, says defendant, plaintiff's performance did not improve and the performance figures of its Canton facility continued to decline. At that point, defendant asserts that it finally decided that plaintiff should be terminated, for poor performance only and not because of plaintiff's age. Plaintiff offers no

evidence from which a jury could determine that defendant's proffered reasons for plaintiff's termination was not worthy of credence. Plaintiff has presented no proof against defendant's contentions which would establish a prima facie case. Hence, under the teaching of *Celotex* and *Burdine*, this action must be dismissed.

**SO ORDERED AND ADJUDGED.**