Joan A. Burt, Washington, DC, for Hammon plaintiffs.

George C. Valentine, Asst. Corp. Counsel, together with John Payton, Corp. Counsel, Robert Mallet, Principal Deputy Corp. Counsel, and Martin L. Grossman, Deputy Corp. Counsel, Washington, DC, for the District of Columbia.

**Marvin K. HAMMON, et al., Plaintiffs,**

**v.**

**Sharon Pratt KELLY, et al., Defendants.**

**Civ. A. Nos. 84–0903 (CRR), 85–0782 (CRR).**

United States District Court, District of Columbia.

Aug. 20, 1993.

OPINION

CHARLES R. RICHEY, District Judge.

On August 12, 1993, counsel representing the Byrne Plaintiffs in the above-captioned consolidated action filed a Motion to Enforce the Settlement Decree. The Byrne Plaintiffs seek to prevent the District of Columbia from demoting approximately 133 sergeants, lieutenants, and captains of the District of Columbia Fire Department ("Department"). The demotions are allegedly inconsistent with the settlement agreement and consent decree entered into by the District, and approved by the Court on November 6, 1990. A similar motion had been filed by the Byrne Plaintiffs on July 9, 1993, but the earlier motion had been withdrawn as moot based upon certain actions taken by the District of Columbia Council. After the District rein-

stated the planned demotions, the Byrne Plaintiffs filed the instant motion. Upon consideration of the Byrne Plaintiffs' Motion, the oppositions filed thereto, the long and contentious history of this case, the applicable law, and the entire record herein, the Court must grant the Byrne Plaintiffs' Motion. The District's current efforts to demote individuals who were promoted pursuant to the consent decree and settlement agreement are inconsistent therewith and constitute a violation of the terms of the consent decree and settlement agreement signed by the parties.[1]

## I. BACKGROUND

The history of this case is a long and unhappy one, filled with incidents of friction and ill will between the parties. The Court of Appeals concurs, referring to the conduct of this suit as "a long, tortuous run of litigation." *Hammon v. Kelly,* 980 F.2d 785, 786 (D.C.Cir.1992) (per curiam). A review of the history is necessary, however, to understand the circumstances surrounding the 1990 settlement agreement and consent decree. The suit is a class action which began with the filing of *Hammon v. Barry,* Civ.Action No. 84–903, by a group of African–American firefighters on March 22, 1984, over nine years ago, seeking to enforce an order of the District of Columbia Office of Human Rights instructing the District of Columbia Fire Department ("the Department") to, *inter alia,* adopt an affirmative action plan. The implementation of this plan was challenged on March 8, 1985, by a group of white firefighters and their union in *Byrne v. Coleman,* Civ. Action No. 85–0872. The plan was also challenged by the United States in *United States v. District of Columbia,* Civ.Action No. 85–797. The cases were consolidated by the District Court in 1985.

From 1985 to 1990, both the District Court and the Court of Appeals used an inordinate amount of judicial resources to resolve the merits of the dispute. In 1985, the District Court held that the promotional procedures in the affirmative action plan were unlawful, but that the hiring procedures were lawful. *Hammon v. Barry,* 606 F.Supp. 1082 (D.D.C. 1985). The Court of Appeals reviewed the hiring portion of the affirmative action plan on appeal, and reversed this Court's decision only after substantial consideration. *Hammon v. Barry,* 813 F.2d 412 (D.C.Cir.1987), *reh'g denied,* 826 F.2d 73 (D.C.Cir.1987), *reh'g en banc granted,* 833 F.2d 367 (D.C.Cir. 1987) (per curiam), *order granting rehearing en banc vacated,* 841 F.2d 426 (D.C.Cir.1988) (per curiam), *cert. denied,* 486 U.S. 1036, 108 S.Ct. 2023, 100 L.Ed.2d 610 (1988).

In 1988, after remand by the Court of Appeals, the District Court endeavored to resolve the remaining issues in the case. In 1990, all of the parties agreed to refer the case to a Special Master for settlement. The Special Master, Professor Stephen A. Saltzburg, then engaged in a concentrated effort along with Counsel and the Court in an attempt to find some method to resolve the case in a manner acceptable to all of the parties.

A settlement agreement was signed by Counsel for all the parties on August 20, 1990, and it provided, *inter alia,* for a fund of $3.5 million to be distributed to members of the Hammon class. Moreover, and more importantly for purposes of the instant motion, the settlement agreement set forth a method for future promotions in the Department. At the time the settlement agreement was signed, no promotions had been made since the lawsuit began in 1984, a period of over six years. The agreement contained a list of individuals who would fill all vacancies as of March 1, 1989. The agreement also provided for two promotional examinations to fill vacancies arising during the periods March 1, 1989–June 1, 1991, and June 2, 1991–June 1, 1993. A copy of the agreement appears in *Hammon v. Barry,* 752 F.Supp. 1087 (D.D.C.1990), at pages 1102–07. The agreement was incorporated into a consent decree that was signed by counsel for the District and for the Byrne Plaintiffs and

---

1. The Court has received a copy of a Temporary Restraining Order issued on August 19, 1993, by the Superior Court of the District of Columbia in the case of *Local 36, Int'l Ass'n of Fire Fighters v. Sharon Pratt Kelly,* 93–CA09501. The Order re-
strains the District for a period of ten days from carrying out planned terminations of recently hired firefighters. The Superior Court's decision does not affect the planned demotions which are the subject of the instant motion.

approved by the undersigned Judge after a fairness hearing on November 6, 1990. *See Hammon v. Barry*, 752 F.Supp. 1087 (D.D.C. 1990).

Unfortunately, the settlement agreement and consent decree did not end the disputes in this case. Some of the firefighters, whose claims the District Court had rejected, filed an appeal of the Court's Decree and Order; in 1991, the Court of Appeals for the District of Columbia Circuit summarily affirmed the Decree and Order of this Court. *Hammon v. Dixon*, 946 F.2d 1564 (D.C.Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992). Further challenges to this Court's Orders have been rejected by the Court of Appeals. *See In re Marvin K. Hammon, et al.*, 1992 WL 34160 (D.C.Cir. Feb. 14, 1992), *reconsideration denied*, No. 92–5036 (D.C.Cir. Apr. 8, 1992); *Hammon v. Kelly*, 980 F.2d 785 (D.C.Cir.1992) (per curiam). Despite these delays, the promotional tests were administered by the District and promotions were made in accordance with the terms of the settlement agreement and consent decree.[2]

The instant dispute arose initially on July 9, 1993, when counsel for the Byrne Plaintiffs sought to stay an impending set of demotions within the Fire Department. The demotions were scheduled to take effect on August 6, 1993, as part of an effort to cut the District budget. On July 22, 1993, the parties informed the Court that the District of Columbia Council had passed a budget without the anticipated demotions, and counsel filed a Stipulation and Withdrawal of the Byrne Plaintiffs' motion on the grounds that actions taken by the District of Columbia Council rendered the Motion moot.

On August 9, 1993, Mayor Sharon Pratt Kelly announced that the demotions would go forward, notwithstanding the action of the District of Columbia Council, and that the demotions would take place on August 20, 1993. The scheduled demotions will result in the demotion by one or more ranks of 45 of the 69 individuals who were promoted by virtue of the second promotional examination,

104 of the 224 individuals who were promoted by virtue of the first promotional examination, and at least 34 of the individuals named in the settlement agreement who received promotions to fill vacancies arising prior to March 1, 1989. The Byrne Plaintiffs filed a new Motion to Enforce the Settlement Decree on August 12, 1993, claiming that the Mayor's actions violate the settlement agreement and consent decree.

II. BECAUSE THE PROMOTIONS OUTLINED IN THE SETTLEMENT AGREEMENT AND CONSENT DECREE WOULD BE RENDERED MEANINGLESS BY THE IMMEDIATE DEMOTIONS PLANNED BY THE DISTRICT, THE DISTRICT MAY NOT ENACT SUCH MEASURES FOR A REASONABLE TIME, WHICH THE COURT FINDS TO BE SIX YEARS FROM THE DATE OF THE COURT'S ADOPTION OF THE CONSENT DECREE.

Before examining the merits of the Byrne Plaintiffs' Motion, the Court wishes to make clear the limited scope of its review. The Court *is not* evaluating the District's budgetary process, nor is it passing judgment on the wisdom of firing and demoting members of the Department. Finally, the Court is not rendering its decision based on the likely effect of the planned actions and whether the actions will actually result in the savings projected by the District government. The *only* question properly before the Court is whether the District's actions are inconsistent with the obligations assumed by the District through the settlement agreement and consent decree signed by counsel for the District in 1990.

The law is clear that the Court may consider the question of whether the District's intended action is inconsistent with its obligations under the settlement agreement and consent decree adopted by the Court on November 6, 1990. As the Court of Appeals for the District of Columbia Circuit only recently noted, there is a "well-established principle

---

2. In addition, $3.4 million of $3.5 million settlement fund was distributed on June 30, 1993, to individual members of the Hammon class in accordance with the formulae set out in the settlement agreement and consent decree.

that a trial court retains jurisdiction to enforce consent decrees and settlement agreements." *Beckett v. Air Line Pilots Ass'n,* 995 F.2d 280, 285 (D.C.Cir.1993). The District concedes that "there is no dispute over a federal court's powers to ensure compliance with a settlement agreement." *See Defendants' Memorandum of Points and Authorities in Opposition to Plaintiffs' Emergency Motion,* at 19. Nevertheless, the District argues that the Court retained jurisdiction only with respect to "implementation of this decree," as stated in the Court's Order of November 6, 1990.

The Court cannot accept the District's argument that the decree was "implemented" the instant the promised promotions were made. Under the District's theory, the District would be free to demote the promoted firefighters at any time after the promotions were "implemented," essentially rendering the consent decree a nullity, and that the Court would be powerless to review such action. The Court's authority to oversee the implementation of the consent decree must at least include the power to ensure that the parties do not immediately repudiate their obligations under that decree.

Part Two of the 1990 consent decree relates to the issue of promotions. Part Two provides, *inter alia,* that:

> During the course of this prolonged litigation, firefighters in the City have been unable to compete for promotion for positions as sergeant, lieutenant, and captain. The inability to compete has been frustrating to members of both the Hammon and Byrne classes and to City and Fire Department officials concerned with the morale of the Department and the safety of the City. Fairness to the Department's employees, black and white, requires that promotions take place as soon as possible. Prompt promotions will be accomplished by making immediate promotions to fill vacancies which arose prior to March 1, 1989 and by providing two promotional tests within a relatively short period of time to fill subsequent vacancies.

*Hammon v. Barry,* 752 F.Supp. 1087, 1122 (D.D.C.1990). The consent decree contained a list of individuals who would be promoted to the positions of sergeant, lieutenant, and captain for vacancies arising prior to March 1, 1989. The consent decree went on to provide for two promotional examinations: the first examination would be used to fill vacancies arising after March 1, 1989, and before June 1, 1991, and the second examination would be used to fill vacancies arising after June 1, 1991, *and for two years thereafter. Id.* at 1123–24.

The Court approved the consent decree, including the provisions with respect to future promotions. In doing so, the Court noted that "[a]ll of the parties recognized that immediate promotions are absolutely essential for the public safety, not to mention improving Fire Department morale for both the Hammon and the Byrne classes." *Id.* at 1097. Furthermore, the consent decree would increase "the opportunities for *all* long-suffering firefighters to take promotional tests quickly to make up for the absence of promotional tests during the last six years." *Id.* at 1098.

The District now claims that the consent decree and settlement agreement do not contain any guarantees as to the duration of the promotions, and that the District may *immediately* demote those firefighters promoted pursuant to the consent decree. The District's position is, however, contrary to the consent decree and settlement agreement and inconsistent with the accepted principle that a Court may construe an agreement to require a reasonable period of performance, in the absence of an explicit provision relating thereto.

The law is clear that the "construction of a consent decree is essentially a matter of contract law...." *Citizens for a Better Environment v. Gorsuch,* 718 F.2d 1117, 1125 (D.C.Cir.1983), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984). As such, the consent decree "should be applied in accordance with its terms under contract law." *Pilon v. U.S. Dep't of Defense,* 796 F.Supp. 7, 10 (D.D.C.1992). The District does not dispute this principle, and it concedes that "a federal court may interpret contract provisions to require a period of performance that is reasonable under the circumstances." *Defendants' Memorandum*

*of Points and Authorities in Opposition to Plaintiffs' Emergency Motion,* at 16. However, the District states that the Court may not prevent the demotions in the absence of an explicit provision guaranteeing the duration of the promotions.

The District's position is inconsistent with existing case law. While it is true that a consent decree should be construed "within its four corners," *United States v. Armour & Co.,* 402 U.S. 673, 682, 91 S.Ct. 1752, 1757, 29 L.Ed.2d 256 (1971), the Supreme Court has also ruled that:

> reliance upon certain aids to construction is proper, as with any other contract. *Such aids include the circumstances surrounding the formation of the consent order,* any technical meaning words used may have had to the parties, and any other documents expressly incorporated in the decree.

*United States v. ITT Continental Baking Co.,* 420 U.S. 223, 238, 95 S.Ct. 926, 935, 43 L.Ed.2d 148 (1975) (emphasis added). *See also United States v. Western Electric Co.,* 797 F.2d 1082, 1089 (D.C.Cir.1986), *cert. denied,* 480 U.S. 922, 107 S.Ct. 1384, 94 L.Ed.2d 698 (1987) (setting forth similar standards by which a consent decree may be construed). Thus, the Court may examine all of the circumstances at the time the consent decree and settlement agreement were signed by the parties.

There is no dispute that the Byrne Plaintiffs signed the settlement agreement and consent decree because of the agreement reached with respect to promotions. "[T]he morale of the Department and the safety of the City ..." were best served by both the Byrne Plaintiffs and the District agreeing to a mutually acceptable method for filling the vacancies within the Department. *See Hammon v. Barry,* 752 F.Supp. 1087, 1122 (D.D.C.1990). In return, the Byrne Plaintiffs "waive[d] any and all claims to further relief...." *Id.* at 1110.

In light of the terms contained within the consent decree, the Court concludes that the District does *not* have the discretion to demote those firefighters who were promoted pursuant to the procedures outlined in the consent decree so soon after those pro-

motions took effect. The District may not enact wholesale demotions of those firefighters for a reasonable period of time following the adoption of the consent decree. Moreover, based upon the circumstances surrounding the adoption of the consent decree, the Court determines that a reasonable period of time in this case is six years from the time the consent decree was approved by this Court.

The Court selects a period of six years because, at the time the settlement agreement was reached and the consent decree was signed in 1990, the firefighters of the District had gone without promotions since 1984, a span of six years. The language of the consent decree, quoted *supra,* clearly indicates that the consent decree was intended to permit the firefighters to compete for and obtain those promotions for which they had waited for six long years. A period of six years is "the most reasonable possible interpretation" of the consent decree and is consistent with the decree's "spirit and intention." *United States v. Int'l Brotherhood of Teamsters,* 723 F.Supp. 203, 210 (S.D.N.Y. 1989), *aff'd as modified,* 931 F.2d 177 (2d Cir.1991).

Other courts have reached similar conclusions when faced with motions to enforce consent decrees. For example, in *Huertas v. East River Housing Corp.,* 992 F.2d 1263 (2d Cir.1993), the trial court was called upon to enforce a settlement agreement. The case involved charges of housing discrimination brought by minority homeseekers against housing cooperatives in Manhattan. The parties reached a settlement by which vacant apartments would be allocated according to racial quotas. However, after only a few months, the cooperatives "stopped accepting applications for apartments, claiming that the waiting list was long enough to fill all possible vacancies...." *Id.* at 1265. The trial court held that, even though the settlement agreement did not explicitly require the cooperatives to keep the application process open for any length of time, the cooperatives' decision to stop accepting applications was inconsistent with the settlement agreement. The Second Circuit affirmed, noting that by directing the cooperatives "to keep the appli-

cation process open, the court was assuring that the settlement agreement would be carried out," notwithstanding the absence of an explicit provision to that effect in the settlement agreement. *Id.* at 1267.

Similarly, in the instant case, the only way for the Court to ensure that the consent decree is carried out is by preventing the planned demotions. The purpose of the consent decree in this case, at least with respect to the Byrne Plaintiffs, was to provide District firefighters with the opportunity for advancement, which they had been denied for six years prior to the settlement. Preventing the District from eliminating those promotions for a similar period of time is perfectly reasonable under the circumstances,[3] and "necessary to effectuate the settlement agreed to by all parties." *Id.* at 1269.

Another case very similar to the instant dispute is *United States v. City and County of San Francisco,* 699 F.Supp. 762 (N.D.Cal. 1988). In that case, the United States had brought suit against the defendants claiming unlawful discrimination on the basis of race by the fire department. A consent decree was entered that required a significant number of promotions and new hires. Subsequently, the City of San Francisco announced plans to demote a number of recently promoted firefighters and to eliminate other promotional opportunities *because of budgetary shortfalls. Id.* at 764–65.

The trial court enjoined the City from reducing the number of authorized positions and from making any demotions for other than legitimate disciplinary reasons. The court held that "the positions must remain funded in the quantity and quality required by the spirit and tenor of the consent decree.... *In the absence of an injunction, the consent decree would be worthless paper." Id.* at 768 (emphasis added).

The court's reasoning in *United States v. City and County of San Francisco* is directly applicable to this case. Although the Court recognizes the budgetary problems faced by the District, it also notes that such difficulties do not alter the District's preexisting obligations under the settlement agreement and consent decree. Just as the District was obligated to pay $3.5 million to the Hammon class members in accordance with the consent decree, so the District was required to make the agreed-upon promotions sought by the Byrne Plaintiffs. For the District to immediately rescind those promotions in an effort to balance the District budget is just as inconsistent with the purpose of the consent decree as if the District were to ask for the return of the settlement fund. Accordingly, the Court must direct the District to forego its plans to demote those firefighters who were promoted in accordance with the settlement agreement and consent decree signed by the District in 1990.

## III. CONCLUSION

Upon consideration of the Byrne Plaintiffs' Motion to Enforce the Settlement Decree, the oppositions filed thereto, the applicable law, the circumstances surrounding the adoption of the consent decree, and the entire record herein, the Court must grant the Byrne Plaintiffs' Motion. The District's current efforts to demote individuals promoted pursuant to the consent decree and settlement agreement constitute a violation of the consent decree and settlement agreement signed by the parties. The Court shall issue an Order of even date herewith consistent with the foregoing Opinion.

## ORDER

Upon consideration of the Byrne Plaintiffs' Motion to Enforce the Settlement Decree, the oppositions filed thereto, the long and contentious history of this case, the applicable law, the entire record herein, and for the reasons articulated in this Court's Opinion of even date herewith, it is, by the Court, this 20th day of August, 1993,

ORDERED that the Byrne Plaintiffs' Motion to Enforce the Settlement Decree shall be, and hereby is, GRANTED; and it is

---

**3.** The Court notes that its decision does not affect the District's authority to demote or terminate individual firefighters for cause through the use of the appropriate procedures. The Court's rul-
ing merely prevents the District from engaging in massive demotions inconsistent with the District's obligations under the consent decree.

FURTHER ORDERED that the District of Columbia shall be, and hereby is, ENJOINED from demoting without cause those firefighters who were originally promoted pursuant to the terms of the settlement agreement and consent decree approved by the Court on November 6, 1990, for a period of six years from that date.