Carolyn CONLEY, et al.,
Plaintiffs-Appellees,

v.

BOARD OF TRUSTEES OF GRENADA
COUNTY HOSPITAL, et al.,
Defendants-Appellants.

No. 82–4018.

United States Court of Appeals,
Fifth Circuit.

June 13, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 8, 1983.

Paul O. Miller, III, Judith J. Johnson, Jackson, Miss., Marc A. Biggers, Greenwood, Miss., for defendants-appellants.

Leon Johnson, R. Stewart Guernsey, Grenada, Miss., for plaintiffs-appellees.

Before RANDALL and HIGGINBOTHAM, Circuit Judges, and McDONALD *, District Judge.

* District Judge of the Southern District of Texas, sitting by designation.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Five former employees of Grenada County Hospital in Mississippi brought this § 1983 action on behalf of themselves and a class of similarly situated persons against the hospital's board of trustees and other officers alleging that adverse employment actions taken against them violated their due process rights. Before a class certification hearing was held, defendants moved for summary judgment claiming that the employees had no property interest in continued employment sufficient to invoke procedural due process protection. The district court denied this motion and instead granted summary judgment in favor of three employees on the ground that they were deprived of a protected property interest without due process. This court granted the hospital's application for leave to appeal from the interlocutory order in order to examine its procedural and substantive propriety. We affirm the grant of summary judgment on the property interest issue. We also affirm the grant of summary judgment on the due process issue as to two of the plaintiffs but reverse as to the third.

Carolyn Conley, Sarah Hendrix, Bessie Trotter, Joan Williams, and Chris Mayhan are former employees of the Grenada County Hospital. All were terminated but Conley, who resigned after being placed on probation. On June 8, 1981, the five employees on behalf of themselves and a described class under Fed.R.Civ.P. 23(b)(2) brought a § 1983 suit against the hospital's board of trustees and other officers alleging that the hospital had disciplined or terminated them without due process. The hospital then moved to dismiss under Rule 12(b)(6), contending that the employees had no property interest in continued employment sufficient to trigger due process.

The hospital also filed the affidavit of Executive Director Fletcher Crawford, thus converting the motion to dismiss into a motion for summary judgment. In his affidavit, Crawford stated that Conley was placed on probation for inadequate work performance before she resigned and that the other plaintiffs were terminated for such reasons as insubordination, poor work performance, interference with physician-patient relationships, absenteeism, or patient complaints. He also stated that none of the plaintiffs had a written or oral contract specifying the duration of their employment. Plaintiffs responded with a memorandum of law, contending that the hospital's "employee guidebook" created a property interest and that the grievance procedures described in the guidebook had not been followed. Conley, Hendrix, and Mayhan also filed affidavits in which they described the inadequacies of the hospital's pretermination proceedings. Though not mentioned by the district court, the attorneys for Conley and Hendrix also filed affidavits describing the deficiencies of the hospital's hearings. Trotter's attorney also filed an affidavit stating that her request for a hearing was denied. In rebuttal, the hospital argued that the grievance procedures set forth in the guidebook did not mandate a hearing and thus created no property interest. It also filed affidavits contesting several allegations by Conley and Mayhan. The hospital did not, however, respond to any assertions regarding the inadequacy of its pretermination hearings.

The court denied the hospital's motion for summary judgment. It instead *sua sponte* entered summary judgment for plaintiffs on the property interest question, reasoning that the hospital's employee guidebook "create[d] on behalf of its employees a legitimate claim of entitlement to their employment status." The court thus did not consider plaintiffs' claim that they had been deprived of a liberty interest. In addition, the court granted summary judgment to Conley, Hendrix, and Mayhan on the issue of the requisite due process because "it is undisputed that [they] were not notified of the specific charges against them in advance of adverse employment action." The court reserved judgment on the remaining plaintiffs' claims until they could file affidavits and the hospital could respond. It also reserved judgment on an award of damages. The hospital moved to reconsider

under Rule 59(e) on the grounds that the court's finding of a property interest was erroneous. The court denied the motion in a second memorandum opinion but certified the order for an interlocutory appeal. The hospital timely applied [1] for leave to appeal, challenging the procedural and substantive propriety of the summary judgment. This court granted leave to appeal.

## Summary Judgment on the Property Interest Question

The hospital contends that the *sua sponte* summary judgment ruling in favor of the plaintiffs on the property interest issue was procedurally erroneous because plaintiffs filed no cross-motion. We note initially that the hospital could have sought direct appeal from this judgment but instead first filed a Rule 59(e) motion for reconsideration. It did not, however, challenge the procedural propriety of the summary judgment ruling in this Rule 59(e) motion. The district court expressly noted this failure in its second opinion: "Defendants do not challenge, as a procedural matter, our entry of judgment in favor of plaintiffs who had not moved for summary judgment." As a general principle of appellate review, we refuse to consider issues not raised below. *See Delesdernier v. Porterie,* 666 F.2d 116, 124–25 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 86, 74 L.Ed.2d 81 (1982). This refusal is particularly appropriate when, as here, a party requests the trial court to reconsider the judgment but conspicuously omits a contention of procedural irregularity that the court could have corrected immediately. *See Fackelman v. Bell,* 564 F.2d 734, 736 n. 1 (5th Cir.1977). Nevertheless, if the issue is a purely legal one and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice, we have proceeded. *See Fehlhaber v. Fehlhaber,* 681 F.2d 1015, 1030–31 (5th Cir.1982).

We find here that neither prong of this "plain error" exception has been met. First, the question whether summary judgment may be granted for the nonmoving party is thoroughly factridden. It depends on whether the original movant has had an adequate opportunity to show that there is a genuine issue of material fact or whether all material facts are already before the reviewing court. *See* 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2720 (1983). Moreover, the merit of the hospital's omitted claim is not so plain or obvious that our failure to consider it would result in manifest injustice. A determination of the existence of a property interest turns on a similar set of facts as a determination of the non-existence of a property interest. We recognize that asserting the absence of a property interest as a matter of law on a given Rule 56 record is not a concession that its presence is in logic an obverse answer. Yet, the hospital stated in a reply memorandum that no discovery was needed before determination of the property interest issue. Moreover, the hospital at no time suggested to the district court in its extensive attack upon his decision that fact issues could be shown. At oral argument the hospital nonetheless suggested that the "reasonable employee expectation" test employed by the district court necessitated discovery regarding employees' perception of the guidebook, without which the summary judgment was premature. We disagree. As will be seen, the question of property interest *in this case* proves to be the legal one of interpreting the law of Mississippi as expressed in the rules of the hospital. Accordingly, we decline to review the procedural propriety of the *sua sponte* grant of summary judgment.[2]

---

1. Contrary to plaintiffs' argument, the hospital's application for leave to appeal was filed within the requisite ten days after entry of the court's order denying the hospital's motion for reconsideration on November 4, 1981.

2. Even if we were to agree that this issue is before us, we nonetheless would conclude that the entry of summary judgment on the property interest question without a cross-motion by plaintiffs was not procedurally erroneous. We recognize that the *sua sponte* grant of summary judgment is a dangerous practice and has resulted in reversal. *See Capital Films Corp. v. Charles Fries Productions,* 628 F.2d 387 (5th Cir.1980). These dangers, however, were not

Although the hospital failed to raise the procedural propriety of the summary judgment ruling before the district court, it did there challenge the substantive propriety of the ruling. In reviewing the court's grant of summary judgment, we must consider the evidence in a light most favorable to the hospital and determine whether there were no genuine factual disputes and whether the plaintiffs were entitled to judgment as a matter of law. *See* Rule 56(c); *Daly v. Sprague,* 675 F.2d 716, 724 n. 10 (5th Cir.1982). The district court's ruling thus can be sustained only if plaintiffs demonstrated no material issue of fact regarding their property interest in continued employment at the hospital. We conclude that the trial court was correct in its decision that plaintiffs enjoyed the requisite property interest.

■■■ A protected property interest in employment exists only when the employee has "a legitimate claim of entitlement to it." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). The source of such a claim can be a state statute, a local ordinance, a rule, or a mutually explicit understanding. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); *White v. Mississippi State Oil and Gas Board,* 650 F.2d 540, 541 (5th Cir.1981). Whatever the source, however, "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Accordingly, the issue here is whether, under Mississippi law, the plaintiffs had the requisite express or implied right to continued employment at the hospital. In this inquiry we are appropri-

ately deferential to the construction of Mississippi law by the district court, a veteran of its bar and bench. *See Bishop v. Wood,* 426 U.S. at 345, 96 S.Ct. at 2077.

■■■ In Mississippi, an employee employed for a permanent or indefinite term may be discharged at the will of his employer provided the employee has furnished no consideration in addition to the services incident to his employment. *See Kelly v. Mississippi Valley Gas Co.,* 397 So.2d 874 (Miss.1981); *Rape v. Mobile & O.R. Co.,* 136 Miss. 38, 100 So. 585 (1924). Mississippi also recognizes that "where the removal can only be for cause, the [employee] has a right to notice and an opportunity to disprove the charges." *In re Bishop,* 211 Miss. 518, 52 So.2d 18, 20 (1951). Many Mississippi statutes governing the employment practices of public employers expressly prescribe either a "terminable at will" or a "for cause" standard.[3] The statute governing county hospitals including Grenada County Hospital is unique, however, because it is indisputably neutral. Under Miss.Code Ann. § 41–13–35, the board of trustees of the hospital is authorized "to promulgate and adopt suitable staff and hospital rules and regulations [and] to employ such personnel as may be necessary to properly maintain and operate such hospitals. . . ." The "employee guidebook" adopted by the hospital here exemplifies such a rule or regulation. It follows that the guidebook is the prime candidate as the source of a legitimate claim of entitlement if it limits the hospital's right to terminate an employee to specified causes or circumstances.

Nevertheless, the hospital denies that the guidebook expresses the law of Mississippi

present here. One concern is that Rule 56, by its terms, contemplates the granting of summary judgment only upon motion. Yet, the hospital so moved and the plaintiffs were not required to make a formal cross-motion as a prerequisite to entry of summary judgment in their favor. *See* 10A C. Wright, A. Miller and M. Kane, Federal Practice and Procedure § 2720 (1983). A second concern is that a party must have a fair opportunity to develop the record in opposition to requested summary judgment. *See E.C. Ernst, Inc. v. General Mo-*

*tors Corp.,* 537 F.2d 105 (5th Cir.1976). As we have stated, the hospital did have this opportunity and its failure to suggest to the trial court that it did not belies its present argument to the contrary.

3. *Compare* Miss.Code Ann. § 21–3–5 (allowing municipalities to discharge police employees without cause) *with* Miss.Code Ann. § 41–13–5 (allowing joint municipal-county hospitals to discharge employees for inefficiency "or for any other good cause.").

in the sense of *Bishop v. Wood,* urging that it is only a personnel manual. Citing several Mississippi cases in which an employer's power of removal was restricted by statute, the hospital suggests that an employee's right to continued employment can arise only under a statute or an enforceable employment contract. This argument misses the mark. All the cases cited by the hospital involved a determination of whether a statute permitted termination at will or limited removal for cause only. *See, e.g., In re Bishop,* 211 Miss. 518, 52 So.2d 18 (1952). None address a situation where, as here, the applicable statute grants authority to a public employer to make its own choice. The Mississippi legislature made no choice between terminable at will and for cause for its county hospital employees, leaving to its presumably specialized boards the task of adopting appropriate policies. Adopted pursuant to authority expressly granted by the legislature, the hospital's rules thus express state policy.

█ We now review the hospital's guidebook to determine whether it creates a legitimate claim of entitlement to continued employment. The guidebook is a fifty-five page document describing "the conditions of employment including policies, practices, responsibilities, rules of conduct, and benefits for the employees of Grenada County Hospital." Under the heading "Job Security," the guidebook assures employees that "[f]or those who measure up to the special demands of hospital employment, there need be no fear of lay-off." It nonetheless warns employees that they may be terminated "because of unsatisfactory service, failure to cooperate with department heads or repeated breaking of hospital rules or the violations justifying termination." The guidebook then lists thirty-six violations that may warrant dismissal. After dismissal, an employee may request a "termination interview." A different section of the guidebook states that "[o]ne of the purposes of this [exit] interview is to make sure that

the reason for the employee's termination is not based on some misunderstanding or condition which could have been remedied by either the hospital or the worker." Though the hospital construes this section as applying only to employees who have resigned, the section expressly refers to "terminating employees." Finally, the hospital is afforded the right to "modify or amend" these policies after providing advance notice of any changes to the employees.

We agree with the district court that these regulations fairly read assure continued employment absent noncompliance with a specified reason for termination. This case is similar to *Glenn v. Newman,* 614 F.2d 467, 471 (5th Cir.1980), in which we held that a personnel regulation listing a number of violations warranting dismissal and describing disciplinary procedures was sufficient under Georgia law to create a property interest in continued employment. Like the regulation in *Newman,* the guidebook here not only permits, but also purports to limit, discharges to those based on the specified causes. Although scattered sections of the guidebook specify other reasons for dismissal that are not among the thirty-six, there is no indication that the guidebook contemplates discharge for some non-specified reason.[4] In this respect, the guidebook guarantees that dismissal will result only from noncompliance with the specified rules of conduct. It is "meant to be analogous to allowing termination for 'cause'." *Newman,* 614 F.2d at 471–72.

The hospital nonetheless argues that this case is "virtually indistinguishable" from *United Steelworkers v. University of Alabama,* 599 F.2d 56 (5th Cir.1979) and *McMillian v. City of Hazlehurst,* 620 F.2d 484 (5th Cir.1980), in which we found no property interests in public jobs. We disagree. In *Steelworkers,* we held that Alabama common law permitting termination at will of permanent employees had not been altered by the University's personnel handbook.

4. *Cf. Ogletree v. Chester,* 682 F.2d 1366, 1371–72 n. 8 (11th Cir.1982) (holding that scattered statements throughout regulations specifying certain conduct that may result in dismissal did not create a property interest because they did not purport to exclude other reasons for dismissal).

That handbook stated that "[j]ust cause for dismissal is not limited to those violations that follow as there may be other offenses committed that may warrant this action depending on a number of factors." It also provided the University with exclusive discretion to dismiss and discipline employees. Indeed, this provision led the panel to observe "We can hardly think of clearer words which could be used by management to reserve the right to hire and fire and discipline employees in the exercise of their discretion." 599 F.2d at 61. The hospital argues that like the handbook in *Steelworkers,* the guidebook here cannot create a property interest because as in Alabama it also is to be read against a background of a common law rule that employees hired for an indefinite term are terminable at will. This argument ignores the differences in the two handbooks and ignores the circumstance that Mississippi law was expressed by the guidebook's description. As we have observed, the Mississippi legislature has taken three tacks: it remains silent, it chooses between termination at will and for cause, or it delegates the choice to certain public employers. Here it delegated and the hospital chose to allow terminations for cause only.

The hospital's reliance on *McMillian* is equally misplaced. We there rejected plaintiff's contention that an ordinance permitting discharge for a violation of one of fifteen rules of conduct created a property interest. We held:

> The language of the [ordinance] does not purport to limit the municipality's employment rights or abrogate the application of Miss.Code Ann. § 21–3–5 [, which permits the municipality] to discharge police employees without cause. The ordinance nowhere undertakes to make its provisions the exclusive basis for dealing with Hazlehurst police officers. It would be entirely unreasonable to imply such a limitation from the fact that specific rules of conduct were made enforceable by reprimand, suspension or dismissal.

620 F.2d at 485. Relying on this language, the hospital contends that the guidebook cannot be deemed the source of a property interest. *McMillian,* however, does not control here. Central to our result there was the presence of a statute permitting terminations without cause.[5] The ordinance in which the employees relied was not explicit enough concerning conduct and disciplinary procedures to override that statute. Thus, we concluded that the ordinance created no property interest. Unlike the statute in *McMillian,* however, § 41–13–35 does not choose for the hospital between a policy of terminable at will or for cause. This statute permits the hospital to make its own decision. We find that pursuant to the legislative grant the hospital did so. The teaching of *McMillian* does not require a different conclusion.

In sum, we find no factual dispute but that the hospital's guidebook created a legitimate claim of entitlement to continued employment. The district court correctly granted summary judgment in favor of plaintiffs on the property interest issue.

### Summary Judgment on the Procedural Due Process Issue

Having granted summary judgment on the property interest issue, the district court also granted summary judgment in favor of Conley, Hendrix, and Mayhan on the procedural due process issue even though neither side had so moved. The hospital contends that this result was procedurally erroneous because it had no opportunity to dispute the facts alleged by plaintiffs concerning the adequacy of the pretermination procedures. Nevertheless, the hospital did not raise this argument in its Rule 59(e) motion. Assuming that the question whether a court may *sua sponte* grant summary judgment implicates purely legal issues, *see Capital Films Corp. v. Charles Fries Productions,* 628 F.2d 387, 390–91 (5th Cir.1980), the merit of the hospital's omitted argument is not so plain or

---

5. Indeed, the court distinguished *Glenn* on the basis "of the absence [in *Glenn* ] of a state law provision similar to Miss.Code Ann. § 21–3–5 (1972) that allowed the municipal employee to be terminated without cause." 620 F.2d at 486 n. 1.

obvious that our failure to consider it would result in manifest injustice. While we disagree with plaintiffs' argument that the hospital admitted the inadequacy of its due process procedures by its assertion that no discovery was necessary and by not responding to plaintiffs' allegations of inadequate procedures, we note that the hospital has at no time suggested to us that fact issues on this matter can be shown. As such, we decline to construe any error as "plain" and thus do not reach the hospital's procedural argument.

■ We nevertheless must determine whether the court's grant of summary judgment on this issue was substantively correct. To establish denial of due process, a plaintiff must show that before termination he did not receive written notice of the reasons for termination and an effective opportunity to rebut those reasons. See *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). Effective rebuttal means that the employee must be given an opportunity to respond in writing to the charges made and to respond orally before the official charged with the responsibility of making the termination decision. *Id.* Summary judgment for the plaintiffs on the procedural due process issue is thus inappropriate unless we can conclude from the summary judgment record that no factual dispute remains as to the unavailability or constitutional inadequacy of any due process proceedings.

■ In granting summary judgment on the due process issue, the district court relied on uncontroverted pleadings and affidavits of Conley, Hendrix, Mayhan, and their attorneys. Viewing this evidence and its reasonable inferences in a light most favorable to the hospital, we conclude that the summary judgment ruling in favor of Hendrix and Mayhan was correct but that the ruling in favor of Conley must be reversed. As the district court noted, the summary judgment evidence of Hendrix and Mayhan demonstrates that neither received notice of the reasons for termination or an opportunity to rebut them. In con-

trast, Conley's evidence is insufficient to sustain her Rule 56 burden. Conley's pleadings and affidavits claim that she was suspended indefinitely before she resigned. While the Supreme Court has held that suspensions may trigger due process protection, *see Goss v. Lopez*, 419 U.S. 565, 576, 95 S.Ct. 729, 737, 42 L.Ed.2d 725 (1975), it also has emphasized "that the timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved." *Id.* at 579, 95 S.Ct. at 738. The court below did not balance Conley's evidence on this scale; instead it analyzed Conley's claim of inadequate due process as if she actually had been terminated from employment. Conley's argument that she was in reality "constructively terminated" reinforces our conclusion that a fact issue remains as to what process was due. We therefore reverse the summary judgment in favor of Conley on the due process issue and remand so that both sides may further develop the facts.

■ Even though we affirm the summary judgment in favor of Hendrix and Mayhan, the district court on remand must yet determine the damages to which they are entitled for the procedural due process violation. We caution that an award of damages requires proof of actual injury. Moreover, if it be proved that plaintiffs would have been terminated even if proper procedures had been used, that proof of actual injury must flow from the loss of the procedural rights. *See Carey v. Piphus*, 435 U.S. 247, 259–264, 98 S.Ct. 1042, 1050–1052, 55 L.Ed.2d 252 (1978).

In conclusion, the summary judgment for plaintiffs on the property interest issue is AFFIRMED; the summary judgment on the issue of requisite due process is AFFIRMED as to Hendrix and Mayhan but REVERSED as to Conley and the case is REMANDED for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; REMANDED.