**Eva S. WHEELESS, Plaintiff,**

v.

**Richard W. MANNING, Administrator, Noxubee General Hospital, Individually and in his Official Capacity; The Board of Trustees of Noxubee General Hospital; W.E. Skinner, A.B. Stephens, Jr., Arthur Varner, W.A. Thomas, Billy W. Perry, Members of the Board of Trustees of Noxubee General Hospital, Noxubee County, Mississippi, Individually and in their Official Capacity, Defendants.**

**Civ. A. No. E86–0018(L).**

United States District Court, S.D. Mississippi, E.D.

July 20, 1987.

Beverly B. Mitchell, Mitchell & Flint, Columbus, Miss., for plaintiff.

Armin J. Moeller, Jr., Miller, Milam & Moeller, Jackson, Miss., for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of the plaintiff for summary judgment and the motion of the defendants to dismiss or, in the alternative, for summary judgment. The court, having considered the memoranda, affidavits and exhibits submitted by the parties, is of the opinion that plaintiff's motion should be denied and defendants' motion for summary judgment should be granted.

The plaintiff, Eva Wheeless, was a staff nurse at Noxubee General Hospital. In July 1985, plaintiff and other nurses prepared a "proposal" which contained complaints about salaries, promotions and the nurses' relationship with the director of nursing. The hospital administrator, Richard W. Manning, held a meeting with the nurses to discuss their complaints. Shortly

thereafter, Manning discharged Wheeless. Plaintiff filed this action pursuant to 42 U.S.C. § 1983 against Manning, the board of trustees of the hospital and the board members individually, charging that defendants violated her rights to procedural due process by dismissing her without an adequate hearing and abridged her right to free speech under the first amendment by discharging her for her activity in submitting the proposal.

## DUE PROCESS

A government employee is not entitled to due process protections in connection with discharge from employment unless he has a property interest in his continued employment or unless a liberty interest is infringed in connection with his dismissal.[1] An employee has a property interest in his job when he has a legitimate claim of entitlement to it. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed. 2d 548 (1972). The claim must be more than a unilateral, subjective expectation. *Id.* Property interests are created by state law, and the sufficiency of a claim of entitlement must be decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). The source of a claim can be a statute, ordinance, rule, or a mutually explicit understanding. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699–2700, 33 L.Ed.2d 570 (1972); *Conley v. Board of Trustees,* 707 F.2d 175, 179 (5th Cir.1983).

Where the Mississippi Legislature has provided for the creation of government jobs, it has followed one of three approaches in determining whether those public employees may be terminated at will or only for cause: (1) the statute specifies that employees may be terminated at will[2] or that they may be discharged only for cause;[3] (2) the statute is silent, in which case the existence or nonexistence of a property interest is determined by reference to ordinances, rules or mutually explicit understandings viewed against the background of the common law rule that employees are terminable at will; (3) the statute delegates to the agency or political subdivision the authority to adopt employment regulations, including whether employees are terminable at will or only for cause. *Conley,* 707 F.2d at 179, 181. Section 41–13–35 of the Mississippi Code, which governs community hospitals such as Noxubee General Hospital, delegates to the hospital the choice between a policy of termination at will or for cause; in such case the hospital's rules express state policy and are the source of any property interests claimed by an employee. *Conley,* 707 F.2d at 180, 181. Accordingly, the question of property interest in this case is a matter of interpreting state law as expressed in the rules of the hospital. *See id.* at 178. Specifically, the issue is whether the personnel policies of the hospital "fairly read assure continued employment absent noncompliance with a specified reason for termination." *Id.* at 180.

Plaintiff concedes that probationary employees of the hospital, defined by the personnel policies as "[n]ew employees serving their first six months of employment," do not have a property interest in their employment and therefore may be terminated without notice or hearing.[4] Wheeless contends, however, that she was not a probationary employee and that the personnel policies manual gives nonprobationary employees a legitimate expectation that they will be terminated only for cause.[5] Defendants assert that plaintiff

---

1. Plaintiff does not allege a deprivation of liberty.

2. *See* Miss.Code Ann. § 21–3–5 (1986).

3. *See* Miss.Code Ann. § 37–9–59 (1986).

4. Plaintiff states that her status as probationary or nonprobationary is the "threshold question" and that she "was not a probationary employee, and accordingly, had a protected property inter-

est." Plaintiff does not argue that she had a property interest even if she was a probationary employee.

5. An employee who is tenured, or terminable only "for cause," has a legitimate claim of entitlement to continued employment and, therefore, a property interest of which he cannot be deprived without due process of law. *Conley,* 707 F.2d at 179.

was a probationary employee and therefore terminable at will, and that even if she had been nonprobationary, the personnel policies do not give nonprobationary employees a property interest in continued employment. Accordingly, the court initially addresses this threshold issue of whether Wheeless was a probationary employee.[6]

As noted above, the hospital's personnel policies manual defines "probationary" employees as "[n]ew employees serving their first six months of employment." The manual also contains provisions making certain fringe benefits available only to regular full-time employees. Plaintiff's argument that she was not a probationary employee at the time of her discharge is twofold. First, Wheeless points out that she worked as a full-time nurse at the hospital from November 1983 until January 1984, was rehired as a part-time employee in June 1984, and on February 11, 1985 was transferred from regular part-time to regular full-time status, where she remained until her termination on August 5. Consequently, she contends, she was not at the time of her discharge a new employee serving her first six months of employment and therefore was not probationary. Second, plaintiff contends that at the time of her discharge she was receiving fringe benefits which the personnel policies reserved to nonprobationary employees and that therefore she cannot be considered to have been a probationary employee.

Plaintiff's contention that she was not probationary because she had been employed by the hospital for more than six months is without merit. The personnel policies manual makes it clear that persons who are rehired after leaving the employ of the hospital must start over with respect to probationary status; the manual provides that "no past services will be credited in cases of re-employment" and that persons rehired "after having terminated shall have the status of a new employee." The manual also provides that when part-time employees are placed in full-time status they "will be given a new hire date and will

receive all benefits and privileges outlined in these Personnel Policies after completing the six month probationary period as a regular full-time employee." Thus, notwithstanding the approximately eight months that Wheeless worked as a part-time nurse immediately prior to her being placed in a full-time position, she was subject to the six month probationary period before becoming entitled to all the privileges of regular full-time status. Less than six months had elapsed from plaintiff's change to full-time status until her discharge.

Plaintiff's assertion that she was nonprobationary because of the fringe benefits which she received is likewise without merit. The benefits which Wheeless received during her employment as a full-time nurse were life insurance, health insurance and a paid holiday on July 4, 1985. It is clear from the personnel policies manual section dealing with holidays that paid holidays are not limited to nonprobationary full-time employees but are available to full-time employees who have been employed for one month. The uncontroverted deposition testimony of Manning, the hospital administrator, was that the availability of life and health insurance is not restricted to nonprobationary employees. Consequently, plaintiff's assertion that she received benefits available only to nonprobationary employees falters. Moreover, although plaintiff alleges that she was receiving "all of the benefits to which non-probationary employees are entitled," it is clear that there are certain fringe benefits, such as sick leave, funeral leave and paid vacations, which are limited to nonprobationary full-time employees and which plaintiff does not allege she received.

For the foregoing reasons, the court concludes that plaintiff was a probationary employee at the time of her discharge. Accordingly, the court need not and does not reach the issue of whether the hospital's personnel policies give nonprobationary

---

**6.** Only if it is determined that plaintiff was not a probationary employee will it be necessary to decide whether the employment policies of the hospital give nonprobationary employees a property interest in continued employment.

employees a property interest in continued employment.

## FREE SPEECH

■ A public employer cannot condition employment on a basis that infringes the employee's right to engage in constitutionally protected speech. *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 1687, 75 L.Ed.2d 708 (1983). However, not all employee speech is insulated by the first amendment from reprisal by the public employer. In *Connick*, the Supreme Court held that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Id.* at 147, 103 S.Ct. at 1690. Wheeless contends that the proposal submitted by the nurses concerned matters of public interest. However, an examination of the proposal reveals that it is in essence an airing of employee grievances about wages, promotions, relations between the nurses and the director of nursing and employee input into policy changes. These are matters of private or personal concern to the employees.[7] *See Connick*, 461 U.S. at 141, 148, 155, 103 S.Ct. at 1686–87, 1690–91, 1694 (speech concerning fair treatment of employees, office morale and relations with supervisors held not to be matters of

public concern). Plaintiff protests that the proposal was directed at the problem of low morale among the nurses, which could affect patient care, and that since patient care is a matter of public concern, the proposal therefore was protected speech. However, in *Terrell v. University of Texas System Police*, 792 F.2d 1360 (5th Cir. 1986), the court said,

> Because almost anything that occurs within a public agency *could* be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee. Rather, our task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as citizen or primarily in his role as employee. In making this determination, the mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

*Id.* at 1362 (footnotes omitted). Applying this standard, it is clear that the proposal was aimed primarily at achieving personal benefits of better wages and working conditions rather than at promoting the public interest. Consequently, the conclusion is compelled that Wheeless was not discharged for speaking "as a citizen upon matters of public concern." *Connick*, 461 U.S. at 147, 103 S.Ct. at 1690.[8] The first amendment "does not require a public office to be run as a roundtable for employee complaints over internal ... affairs." *Connick*, 461 U.S. at 149, 103 S.Ct. at 1691. Manning's actions in discharging Wheeless may well have been petty, unfair or un-

---

7. Plaintiff's claim that the proposal's complaint about "wage discrimination" involves a matter of public interest warrants more detailed comment. A complaint about discrimination in wages based on race, sex or age would unquestionably involve matters of public interest. *See Connick*, 461 U.S. at 146, 148 n. 8, 103 S.Ct. at 1689–90, 1691 n. 8 (complaints about racial discrimination inherently of public concern). The "wage discrimination" protested by the proposal, however, was that the salaries for starting nurses with no experience were almost as high as those paid to more experienced nurses. This complaint that the salary structure was personally unfair to experienced nurses does not rise to the level of a matter of public concern.

8. Plaintiff argues that speech is also protected when made "as a citizen on a matter of *general* concern, not tied to a personal employment dispute." *Connick*, 461 U.S. at 148 n. 8, 103 S.Ct. at 1691 n. 8 (emphasis added). She contends that, even if her speech was not upon a matter of *public* concern, it was at least on a matter of *general* concern. Even assuming, however, that the Court intended to make a distinction between matters of "public" and "general" concern, it cannot correctly be said that the speech at issue was "not tied to a personal employment dispute."

wise. That does not, however, make his actions unconstitutional.

For the reasons set forth above, the court concludes that, plaintiff did not have a property interest in her continued employment and therefore was not deprived of any due process rights in her discharge. The court further concludes that because plaintiff's speech was not upon a matter of public concern, her discharge did not violate her first amendment rights. Accordingly, it is ordered that the motion of the defendants for summary judgment is granted.

A separate jugement shall be submitted in accordance with the local rules.