**Dorothy A. BRIDGES, Plaintiff,**

**v.**

**The Honorable John Michael SENGER, Leelanau County Probate Court, Leelanau County Board of Commissioners, Otto Mork, Kathy Craker, Donald W. Mitchell, John D. Stanek, John A. Gallagher, Joseph A. Brzezinski, Philip E. Deering, and Leelanau County, a Michigan body corporate, jointly and severally, Defendants.**

**No. G88-864 CA7.**

United States District Court, W.D. Michigan, S.D.

Jan. 29, 1990.

George F. Bearup, Menmuir, Zimmerman, Kuhn & Bearup, Traverse City, Mich., for Dorothy A. Bridges.

Brian D. Devlin, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Tort Defense Div., Lansing, Mich., for John Michael Senger and Leelanau County Probate Court.

Catherine D. Jasinski, Cummings, McClorey, Davis & Avis, P.C., Traverse City, Mich., for Leelanau County Bd. of Com'rs, Otto Mork, Kathy Craker, Donald W. Mitchell, John D. Stanek, Joseph A. Brzezinski, Phillip E. Deering and Leelanau County, a Michigan body corporate.

## OPINION

ENSLEN, District Judge.

This case is before the Court on two motions. First, defendants John Senger and the Leelanau Probate Court filed a motion to dismiss on February 15, 1989. The Honorable John Senger is the Chief Judge of the Probate Court of Leelanau County. Second, the remaining defendants—Leelanau County, the Leelanau County Board of Commissioners, and the individual commissioners—filed a March 27, 1989 motion to dismiss or for summary judgment. Plaintiff, a former juvenile register/volunteer coordinator with the Leelanau Probate Court, sets forth her claims in a nine count complaint filed December 5, 1988. She alleges the following:

Count I § 1983 violation (Deprivation of Property Right)

Count II § 1983 violation (Deprivation of Liberty Right Stigmatizing Charges)

Count III § 1983 violation (Deprivation of Liberty Right/First Amendment)

Count IV Age Discrimination Claim (29 U.S.C. § 621 and Mich.Comp.Laws § 37.2102)

Count V Promissory Estoppel/Detrimental Reliance

Count VI Breach of Oral Contract

Count VII Intentional Interference with Contract

Count VIII Defamation

Count IX  § 1983 violation (Due Process Deprivation)

### Discussion

#### Facts

In April 1976, plaintiff Dorothy Bridges was appointed by Probate Court Judge Elizabeth Weaver as Probate Court Volunteer Coordinator, a newly-created position. Judge Weaver requested approval from the Leelanau County Board of Commissioners to create this position. The position was originally funded by State of Michigan basic grant monies.

In November 1986, then Probate Judge Weaver was successful in her bid for the Michigan Court of Appeals where she currently sits. The Honorable John Michael Senger took the office of Probate Court Judge on January 1, 1987. On February 26, 1987, plaintiff was appointed juvenile register and volunteer coordinator by Judge Senger. On June 24, 1987, Judge Senger discharged plaintiff from her position with the Probate Court. Plaintiff claims she was terminated unlawfully without notice or opportunity to be heard. Judge Senger says that plaintiff lacked a number of skills necessary for that position.

#### Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the pleading. *Elliot Co., Inc. v. Caribbean Util. Co.,* 513 F.2d 1176 (6th Cir.1975). Technically, of course, the 12(b)(6) motion does not attack the merits of the case—it merely challenges the pleader's failure to state a claim properly. 5 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 1364, at 340 (Supp.1987). In deciding a 12(b)(6) motion, the court must determine whether plaintiff's complaint sets forth sufficient allegations to establish a claim for relief. The court must accept all allegations in the complaint at "face value" and construe them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983); *Amersbach v. City of Cleveland,* 598 F.2d 1033, 1034–35 (6th Cir.1979); *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176 (6th Cir.1975).

The complaint must in essence set forth enough information to outline the elements of a claim or to permit inferences to be drawn that these elements exist. *Jenkins v. McKeithan,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); *German v. Killeen,* 495 F.Supp. 822, 827 (E.D.Mich. 1980). Conclusory allegations are not acceptable, however, where no facts are alleged to support the conclusion or where the allegations are contradicted by the facts themselves. *Vermilion Foam Products Co. v. General Electric Co.,* 386 F.Supp. 255 (E.D.Mich.1974). The court cannot dismiss plaintiff's complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

#### Plaintiff's Claims

There are a number of possible deficiencies with plaintiff's lawsuits against these defendants. Most notably, plaintiff has inadequately alleged the due process elements of her § 1983 claim in Counts I, II, III, and IX. To begin with, I believe that plaintiff correctly argues that she has a property right (Count I) in her continued employment. *Bacon v. Patera,* 772 F.2d 578 (6th Cir.1985). Property, for the purposes of the Fourteenth Amendment, is broader than technical property rules under traditional state law. This term includes entitlements, benefits or reasonable expectations created by state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Informal oral promises by superiors or language in employee handbooks create a protected property right in public employment. *McLaurin v. Fischer,* 768 F.2d 98 (6th Cir. 1985) (Director of Neurosurgery at state university had "property right" in position because of promise by university president and common law tradition in school granting him permanent status); *Conley v. Board of Trustees of Grenada County*

*Hospital,* 707 F.2d 175 (5th Cir.1983) (employees have property interests based on employee handbook); *Vinyard v. King,* 728 F.2d 428 (10th Cir.1984) (hospital handbook creates property right); *Vail v. Board of Paris Union,* 706 F.2d 1435 (7th Cir.1983) (promise by school board that coach would be rehired created property right).

Similarly, plaintiff has alleged deprivations of protected liberty interests in Counts II and III of her complaint. As to Count II, it is well recognized that a public employee has a right not to be fired with stigmatizing charges publicly disseminated about her without a chance to clear her name. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Plaintiff has also alleged a deprivation of a liberty interest in her exercise of First Amendment rights (Count III). She claims that as a public employee, she has a right of action under § 1983 where she was fired for exercise of First Amendment rights, as she has been deprived of liberty without due process of law, under *Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); *Stern v. Shouldice,* 706 F.2d 742 (6th Cir.1983).

Although plaintiff has adequately alleged liberty or property interests in Counts I–III and IX, she must further show that she has been deprived of the interest *without due process of law* to state a claim here under § 1983. *E.g., Bacon v. Patera,* 772 F.2d 259, 263–64 (6th Cir.1985). There are two ways plaintiff might have alleged the due process element. A plaintiff may attempt to show that the defendant had an established policy of committing the type of violation alleged. *See Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982). In this case, no such allegations have been made.

Alternatively, a plaintiff might allege that a defendant's actions were random and unauthorized and that the state procedures for remedying such conduct are inadequate. *See Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981);

*Bacon v. Patera,* 772 F.2d 259, 264 (6th Cir.1985). In *Wilson v. Beebe,* 770 F.2d 578 (6th Cir.1985), the Sixth Circuit explained:

> If the state does provide a remedy which meets this standard, then the deprivation though under the color of state law, is not without due process of law.

770 F.2d at 563.

Here, plaintiff has not alleged that the State of Michigan fails to provide adequate post-deprivation remedies. Quite the contrary, plaintiff includes several state remedies in her complaint filed in this Court. The state remedies need not be as complete as that which would have been possible under 42 U.S.C. § 1983. For example, although a state remedy may not permit plaintiff to recover attorney's fees as she might under § 1983, this in no way renders the state remedy inadequate. *Wilson,* 770 F.2d at 584. Without an allegation of inadequate state remedies, plaintiff's § 1983 claims simply cannot survive a defendant's motion to dismiss. Counts I, II, III, and IX therefore should be dismissed.

■ Furthermore, no facts alleging a violation of the Equal Protection Clause exist to support a claim under § 1983. The Court observes that in plaintiff's Count IV, the age (and sex) discrimination claim, she makes some conclusory allegations as to age discrimination, *see,* Complaint, ¶ 34, and no factual allegations whatsoever with regard to sex discrimination. *Cf.* Complaint, at ¶ 13. Thus Count IV will be dismissed to the extent that it attempts to allege a sex discrimination charge. Under federal law, specifically, the *McDonnell–Douglas* approach, in order to establish an age discrimination claim, a plaintiff must establish that: (1) he was a member of the protected class; (2) he was discharged; (3) he was qualified for the position; and (4) he was replaced by a younger person. *See, e.g., Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66 (6th Cir.1982). Then, if the plaintiff establishes this prima facie case of age discrimination, the defendant has the burden to articulate a legitimate, nondiscriminatory reason for the employee's dismissal. If a legitimate, nondiscrimi-

natory reason is given, the plaintiff must then prove by a preponderance of the evidence that the legitimate reason proffered by defendant is actually a pretext for discrimination. I do not believe that plaintiff has set forth facts sufficient to state a cause of action for age discrimination under federal law. To begin with, the complaint must set forth facts outlining the elements of a claim, yet even if plaintiff made a prima facie case of age discrimination based on the first four elements under *McDonnell–Douglas*, plaintiff has produced no facts, not one, suggesting that any legitimate reason proffered by defendant would be a pretext for discrimination. At best, plaintiff states in conclusory terms that "[i]n his decision to discharge plaintiff, defendant Senger considered plaintiff's age as a determining factor in making his adverse employment decision with regard to plaintiff." Complaint, at ¶ 34. The Sixth Circuit has been clear about a civil rights action under § 1983 containing mere conclusory allegations. Facts must be set forth to support the conclusions about unconstitutional conduct. *Chapman v. City of Detroit,* 808 F.2d 459 (6th Cir.1986). I will therefore dismiss Count IV as to the federal age discrimination claim as well.

■ There are more problems with plaintiff's claim. Plaintiff's complaint alleges a link between the County, Board, and individual commissioners and the conduct which forms the basis of this lawsuit. Plaintiff alleges that the Leelanau Board of Commissioners held the final and ultimate authority over defendant Senger's decision to discharge plaintiff. Pursuant to that authority, plaintiff claims that the County, Board, and Commissioners discriminated against her on the basis of age and sex, and showed reckless indifference to defendants Senger and the Probate Court's violation of her constitutional rights. This Court, however, is far from convinced about the requisite link between the County, Board, or individual commissioners and the alleged illegal conduct. To begin with, I find that as a matter of law the Board and commissioners did not have the authority to hire and fire plaintiff, nor were the Board and commissioners plaintiff's em-

ployer. Further, plaintiff alleges no facts in support of her contention that the Board and Commissioners exercised any authority they allegedly had. Instead, plaintiff relies on one statement stating that the Board of Commissioners held the final and ultimate authority over plaintiff's termination and a few conclusory statements alleging discrimination and reckless indifference.

Michigan law provides that the probate judge has exclusive authority to appoint personnel employed in the court. *See* Mich.Comp.L. § 712A.7 to A.10; Mich. Court R. 8.110(e)(3)(d). In a recent case, the Michigan Court of Appeals held that in addition to the personnel and administrative functions, a probate court has the inherent power to compel adequate funding for necessary judicial administration. *Seventeenth District Probate Court v. Gladwin County Board of Commissioners,* 155 Mich.App. 433, 401 N.W.2d 50 (1987). The employment agreement and the personnel policies of the Probate Court in Leelanau County confirm that the probate court is plaintiff's employer and that, as the personnel policy explicitly provides: "It is understood that the personnel in Leelanau County Probate Court serve at the pleasure of the presiding judge of probate." In the grievance procedure for the probate court, the personnel policy reads:

*Procedure:*

*Step 1.* An employee having a grievance will state the grievance to his/her administrator. If the grievance is not satisfactorily settled, it shall be reduced to writing within twenty-four (24) hours after it is first verbally presented to the administrator, signed by the employee and submitted to the administrator who shall write his/her disposition thereon within twenty-four (24) hours after he/she received it. Saturday, Sunday, and holidays shall be excluded from the twenty-four (24) hour period. Any resolution of a grievance in this step must be approved in writing by the Judge before it will be deemed to be effective.

*Step 2.* Any grievance which is not resolved in Step 1 may be submitted in writing to the Judge for resolution with-

in one (1) week after receipt of the decision of Step 1.

No complaint or grievance shall be considered at any step unless it has been filed and processed within the respective time limits and procedures set forth above. If said time limits and procedures are not followed by the employee, the grievance shall be considered settled. Every attempt shall be made to resolve grievances before Step 2.

*Any disposition of a grievance by the Judge shall be final and binding upon the Court and the [Employees] Association and the individual employee and shall not be subject to further appeal.*

*See* Defendant's Motion for Summary Judgment, Ex. 3, at 7. The personnel policies are incorporated by reference in the employee agreement. *See id.,* Ex. 2, at 2.

Thus I conclude as a matter of law that the County, Leelanau Board of Commissioners and individual commissioners had no authority to terminate plaintiff's employment. Similarly, plaintiff does not allege facts supporting her claim that the County, Board, or commissioners exercised any decision-making power to end her employment. Plaintiff in Counts I, II, III, and IX alleges a violation of 42 U.S.C. § 1983, because she was deprived of property, liberty, and free speech rights. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore to state a claim against the Leelanau County defendants, plaintiff must allege:

1. violation of a protected right;
2. proximately caused;
3. by a person; and
4. under color of statute, ordinance, custom, or usage.

Defendants Leelanau County, the County Board of Commissioners and the individual commissioners cannot be the "person" that caused the violation of a protected right. Although it is true that a private person may be held liable under § 1983 for acts completed in conspiracy with a judge, *Martin-Marietta v. Bendix Corp.,* 690 F.2d 558 (6th Cir.1982), no such factual allegations are made here and Michigan law, as well as the employment agreements and policies of these parties, confirms that as a matter of law, the County, Board, and commissioners did not control the termination complained of in this case. *See, e.g., Hughson v. County of Antrim,* 707 F.Supp. 304, 307–308 (W.D.Mich.1988). And for the same reasons, I am also convinced that plaintiff sustain her claim of age discrimination in Count IV against these defendants. The Federal Age Discrimination Act provides in relevant part that:

> (a) It shall be unlawful for an *employer*
> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges, or employment, because of such individual's age;

29 U.S.C. § 623.

Thus in addition to the deficiencies in the causes of action themselves, plaintiff fails to allege the requisite connection between the claims (in Counts I–III, IV (federal), and IX) and the County, Board of Commissioners, and individual commissioners.

As to defendants Senger and the Probate Court, there may be additional barriers to plaintiff's attempt to state a claim. The Honorable John Senger, named in his official capacity, raises an Eleventh Amendment issue. Suits against an official in his official capacity are, of course, suits against the entity the individual represents. *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). The Eleventh Amendment is

generally recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit. *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Thus the Probate Court, subject to a lawsuit in federal court by a citizen of the State, may be insulated by the Eleventh Amendment unless the State either consents to suit or waives its Eleventh Amendment immunity. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98–100, 104 S.Ct. 900, 906–908, 79 L.Ed.2d 67 (1984).[1] Prospective injunctive relief may be available to a plaintiff against a state official acting in his official capacity, however. *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974).

Whether a political entity created by state law is entitled to sovereign immunity under the Eleventh Amendment depends on the agency's powers and characteristics. When an action is brought against a public institution, and the officials thereof, the question of immunity turns on whether it should be treated as an arm or alter ego of the state. *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). The courts have set forth some important guidelines to determine whether the political entity is an agent of the State. Evidence that the state statutes and case law view the entity as an arm of the state is an important factor here. *Clark v. Tarrant County,* 798 F.2d 736, 744 (5th Cir.1986). Courts have also considered the source of funding as the primary test of agency for purposes of recognizing Eleventh Amendment immunity. *Blake v. Kline,* 612 F.2d 718 (3d Cir. 1979); *Unified School District v. Epperson,* 583 F.2d 1118 (10th Cir.1978). In *Epperson,* the court looked at the following:

(1) To what extent does the subdivision, although carrying out a state mission,

function with substantial autonomy from the state government, and;

(2) To what extent is the purported agency financed independently of the state treasury.

583 F.2d at 1122.

Although I need not decide the Eleventh Amendment issue in the matter before me, I observe first that the Michigan Constitution, article 6, at ¶ 1, states as follows:

The judicial power of the state is vested exclusively in one court of justice which shall be divided into one supreme court, one court of appeals, one trial court of general jurisdiction known as the circuit court, one probate court, and courts of limited jurisdiction that the legislature may establish by two-thirds vote of the members elected to and serving in each house.

Also, the salaries of probate judges in the State of Michigan are paid by the State as well as the counties, with the State responsible for fifty or more percent of the base salary. *See* Mich.Comp.L. ¶ 600.821 to 822. These factors suggest that defendants Senger and the Probate Court are also insulated from liability on Eleventh Amendment grounds, with prospective injunctive relief still possibly available against the judge in his official capacity.

I also need not decide a related issue, that is, to what extent the Probate Court is immunized from suit because it is not itself a legal entity capable of being sued. There is authority for the proposition that a state probate court cannot be sued as a legal entity in a federal district court. *Howard v. Brown,* No. CV188–42 (S.D.Ga. Nov. 23, 1988) (LEXIS, Genfed library, Dist file). In *Howard v. Brown,* the court first noted that a federal court has no jurisdiction to administer an estate or entertain an action interfering with proceedings in a probate court. Finding no authority for the state probate court as a legal entity, the court in *Howard v. Brown* concluded that the probate court was not subject to suit in its own name. *Id.* at 5.

---

**1.** A state may also be sued in federal court if Congress expressly overrides the state's immunity pursuant to its authority under the Fourteenth Amendment. *Pennhurst v. Halderman,*

465 U.S. at 99, 104 S.Ct. at 907. Congress did not override the state's immunity in enacting § 1983, however. *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

**1408**

Such a result was proper due to "the nature and function of courts within our society" and the fact that "a court is defined not as a person or quasi-artificial person [which under Georgia law may be held capable of being sued], but as 'a place in which justice is judicially administered.... the exercise of judicial power, by the proper officer or officers, at a time and place appointed by law.' " *Id.* at 6 (quoting Justice Story in *United States v. Clark,* 25 Fed.Cas. 441 (C.C.D.Mass.1813) (No. 14.-804)). This Court has also held that certain departments or subdivisions of an entity capable of being sued are not properly sued themselves. *See Moomey v. City of Holland,* 490 F.Supp. 188, 190 (W.D.Mich.1980) (police department); *Isom v. O'Brien,* No. K88–136 slip op., at 5, 1989 WL 200438 (W.D. Mich.1989) (sheriff's department).

I must reject, however, the contention that defendant Senger is, in his personal capacity, entitled to absolute immunity. The Supreme Court has recently addressed this issue, holding that a state court judge making an employment decision is not acting in his official capacity and is thus not entitled to absolute judicial immunity. *Forrester v. White,* 484 U.S. 219, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Furthermore, a judge is not shielded from suit where his conduct violates clearly established statutory or constitutional rights. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

*Conclusion*

The remaining claims of plaintiff against all defendants are state law causes of action. *See* Counts V–VIII. With all the federal claims dismissed, it would be improvident of this Court to retain jurisdiction over the remaining claims. In *Gaff v. Federal Deposit Insurance Corp.,* 814 F.2d 311 (6th Cir.1987), the Sixth Circuit made clear its strong policy against the exercise of pendent jurisdiction where all federal issues are dismissed before trial. 814 F.2d at 319. *See also Nash & Assocs., Inc. v. Lum's of Ohio, Inc.,* 484 F.2d 392, 396 (6th Cir.1973); *Burt v. Blue Shield,* 591 F.Supp. 755, 759 (S.D.Ohio 1984). *See also Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 108 S.Ct. 614, 98 L.Ed.2d

720 (1988). While the Sixth Circuit declined to adopt the Second Circuit's opinion that the retention of jurisdiction in such a case would be an abuse of discretion absent unusual circumstances, *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2d Cir.1975), it did note that the "general rule disfavoring the exercise of pendent jurisdiction under these circumstances" would counsel dismissal of state law claims in most such cases. 814 F.2d at 319. I therefore decline to exercise pendent jurisdiction over the state law claims in Counts V–VIII. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Gaff,* 814 F.2d 311.

## JUDGMENT ORDER

In accordance with the opinion entered on this date;

IT IS HEREBY ORDERED that defendants Senger and the Probate Court's February 15, 1989 motion to dismiss is GRANTED;

IT IS FURTHER ORDERED that defendants Leelanau County, Leelanau County Board, and the individual commissioners' motion to dismiss is GRANTED;

IT IS FURTHER ORDERED that plaintiff's state claims (Counts V–VIII) be DISMISSED without prejudice.